UNITED STATES, Appellee

v.

James S. MacCULLOCH, First
Lieutenant, U.S. Army,
Appellant.

No. 93–0914.
CMR No. 9102256.

U.S. Court of Military Appeals.

Argued April 21, 1994.

Decided Sept. 15, 1994.

For Appellant: *Captain Victor A. Tall* (argued); *Colonel Stephen D. Smith* (on brief); *Colonel Malcolm H. Squires, Jr., Major Fran W. Walterhouse, Captain Robin N. Swope, Captain Robert Lane Carey.*

For Appellee: *Captain Louis E. Peraertz* (argued); *Colonel Dayton M. Cramer, Major Joseph C. Swetnam, Major Kenneth T. Grant* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Pursuant to his pleas, appellant was convicted of rape; taking indecent liberties with two different minors; committing indecent acts with a female and a male minor; and indecent assault, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 USC §§ 920 and 934, respectively. A second specification of rape of the same victim was dismissed because of the statute of limitations. Appellant was sentenced to dismissal, confinement for 25 years, and total forfeitures. Pursuant to a pretrial agreement, the convening authority approved the sentence but suspended confinement in excess of 12 years for 1 year. The Court of Military Review affirmed the findings and sentence in an unpublished opinion. We granted review on the following issues:

I

WHETHER FIRST LIEUTENANT MacCULLOCH WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DURING THE POST–TRIAL PHASES OF HIS COURT–MARTIAL.

II

WHETHER THE CUMULATIVE EFFECT OF THE NUMEROUS ERRORS THROUGHOUT THE PRESENTENCING AND POST–TRIAL PHASES OF THE COURT–MARTIAL DEPRIVED APPELLANT OF HIS RIGHT TO DUE PROCESS.

Appellant claims that trial defense counsel was ineffective in (1) failing to secure and submit letters recommending clemency, (2) submitting "a damaging letter" to the convening authority prior to his action, and (3) failing to object to the staff judge advocate (SJA)'s recommendation that erroneously indicated appellant had been found guilty of an additional specification of rape.

As to Issue I, we hold that defense counsel did not exercise reasonable diligence, which resulted in substantial prejudice to appellant. As to Issue II, we hold that counsel reasonably completed and made valid tactical decisions during the presentencing stage.

Issue I

FACTS

At trial appellant was represented by civilian counsel and military defense counsel. After his trial, appellant expressed his desire that the post-trial responsibilities would be handled by his civilian counsel. The SJA completed his recommendation on November 14, 1991. One week prior to February 4, 1992, appellant threatened to dismiss military counsel. On February 4, 1992, appellant asked military defense counsel to submit the post-trial matters. On that same date military defense counsel submitted a packet with a number of enclosures to the convening authority on appellant's behalf. One enclosure was a letter from the civilian attorney to

appellant's parents which had been sent along with seven other enclosures to the military defense counsel by appellant's mother. In this letter which was written after the trial, civilian defense counsel explained that when he was hired

> probably the worst problem that we had to deal with was Scott's signed confession. As you know, in that confession he elaborated on the events that occurred during those years, and his behavior and actions in relation to the children. Our Motion (of which you received a copy) attempted to show that the information had been elicited from him improperly and illegally, and thus should be suppressed and kept from the jury. The Judge disagreed and held that Scott knew what he was doing when he waived his rights to request counsel and signed the confession. The Judge's ruling against us in this particular matter almost made the necessity of a plea bargain a foregone conclusion.

The sentence that could have actually been imposed upon Scott ranged up to life imprisonment. While there are doubtless aspects of the case, and the Brimhall family, that argue for extenuation and mitigation, none of those factor, either the relationship between Scott and the Brimhall woman, or the family environment the children grew up in, or their own deviant behavior is allowed to excuse the fact that as an adult he knowingly and willingly engaged in sexual contact with children significantly under the age of consent. In admitting Scott's confession this is the information that the Judge determined would be allowed to go before the jury.

Through some long conversations and some serious negotiating Captain Frey managed to obtain an offer of 12 years imprisonment in exchange for a guilty plea to all of the charges. Please bear in mind that we had very limited leeway in arguing for sentencing: they had an excellent case and a Judge inclined to rule in their favor, and we had very little to put up against that. For Scott to have taken the stand and denied the statements made in his confession and the statements made by the Brimhall woman, the two girls, and the

young boy, as well as the expert testimony offered by the government psychologist, would have completely destroyed any credibility he might have had before the jury. As it was, we decided and I still believe rightly so, that the best course of action to follow was to accept the plea bargain and proceed to argue sentencing in the hopes that we would allow the jury to get a look at "the big picture" of Scott's life and career, rather than focusing narrowly on the incidents that were charged here.... I saw that his statement had moved to tears the wife of the very government attorney who was prosecuting the case.... Because of the pre-trial agreement (of which the jury knew nothing), we were not in fact obliged to accept the 25 years, but could hold the government to the 12; as per federal parole guidelines, I believe Scott will be eligible for parole after one-third of that sentence has been served.

## DISCUSSION

 The Sixth Amendment guarantees the right to assistance of counsel, and in the military this right exists regardless of indigence. Art. 27, UCMJ, 10 USC § 827. In *Morris v. Slappy,* 461 U.S. 1, 14, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983), the Supreme Court "reject[ed] the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel." As the Court commented in *United States v. Cronic,* 466 U.S. 648, 657 n. 21, 104 S.Ct. 2039, 2046 n. 21, 80 L.Ed.2d 657 (1984), "[T]he appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." In *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), the Court held "the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment...." *Id.* at 159, 108 S.Ct. at 1697. That right may be outweighed by the judicial system's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* at 160, 108 S.Ct. at 1698; *see Taylor v. Illinois,*

484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).

■ The standard for measuring the claims of ineffective assistance of counsel is a two-pronged test which consists of a competence prong and a prejudice prong. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott,* 24 MJ 186 (CMA 1987).

Pursuant to ABA Model Rules of Professional Conduct 1.3 (1983), which has been adopted by the Army, *see* Dep't. of the Army Pamphlet 27–26, Rules of Professional Conduct for Lawyers (December 1987), now Army Regulation 27–26, Rules of Professional Conduct for Lawyers (May 1, 1992), defendants are entitled to be zealously represented by their attorneys. Assuming appellant asked his mother to give the letter to the defense counsel so that it might be submitted to the convening authority, does that excuse defense counsel for his action? To state it another way: Who is responsible for the tactical and strategic post-trial decisions? Certain decisions are for the client and the others are for defense counsel. Standard 4–5.2(a), ABA Standards for Criminal Justice, The Defense Function (3d ed.1993), recognizes that these five decisions are to be made by the client:

(i) what plea to enter;

(ii) whether to accept a plea agreement;

(iii) whether to waive jury trial;

(iv) whether to testify in his or her own behalf; and

(v) whether to appeal.

■ The great deference which the civilian system pays to the defendant's choices was recognized in *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), in which the Court permitted the defendant to plead guilty even though he insisted on his innocence, although this is not possible in the military. Art. 45(a), UCMJ, 10 USC § 845(a).

The Supreme Court by case law has added two choices to this category: the right to be present at trial—*Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); and the right to self-representation—*Faretta*

*v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). But ABA Standard 4–5.2 (1993) recognizes that these other matters are within the control of counsel:

(b) Strategic and tactical decisions should be made by defense counsel after consultation with the client where feasible and appropriate. Such decisions include what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and what evidence should be introduced.

(c) If a disagreement on significant matters of tactics or strategy arises between defense counsel and the client, defense counsel should make a record of the circumstances, counsel's advice and reasons, and the conclusion reached. The record should be made in a manner which protects the confidentiality of the lawyer-client relationship.

■ Counsel is expected to emphasize the important issues and "winnow[ ] out weaker arguments...." *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983). This means that counsel should focus "on one central issue if possible, or at most on a few key issues." *Id.* at 751–52, 103 S.Ct. at 3312–13. In this case defense counsel was required to make an evaluative judgment on what items submitted by appellant's mother were to be submitted to the convening authority. If defense counsel thought some matters should not be submitted, he should have so advised appellant. While there was a late request for continued representation by appellant, this is not an excuse for counsel's action.

One of the last best chances an appellant has is to argue for clemency by the convening authority. The rules of evidence do not apply. RCM 1105(b), Manual for Courts-Martial, United States, 1984, states the accused may submit "any written matters which may reasonably tend to affect the convening authority's decision...." The convening authority has absolute discretion to take any action he or she sees fit as long as an acquittal is not affected or a sentence increased. RCM 1107(b)(1); 1107(c). *See*

*also United States v. Cowan,* 34 MJ 258 (CMA 1992) (imposing reasonable and lawful conditions for suspension of sentence); *United States v. Schneider,* 38 MJ 387 (CMA 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2100, 128 L.Ed.2d 662 (1994).

While counsel submitted ten items to the convening authority, the letter from civilian defense counsel undercut the plea for clemency and prejudiced the substantial rights of appellant. Art. 59(a), UCMJ, 10 USC § 859(a). The letter spoke about "the worse problem" in the case was their son's signed confession. This confession "elaborated on the events that occurred during those years." The clear implication is that appellant committed more crimes than what was charged. The attorney then explained that they tried to prevent this from being seen but failed; thus the plea bargain was "a foregone conclusion." The attorney went on to point out that the plea bargain was the best that could be expected and implied that it was unlikely that the sentence would be further reduced. As we have indicated, counsel should have winnowed out the favorable information from this letter and put it into an executive summary, rather than submitting it *in toto* and effectively negating any plea for clemency. What we have here is a failure of the clemency process, so relief is required.

### Issue II

As to Issue II appellant argues that both of his defense counsel were ineffective during trial because they failed to call "two key military witnesses"; failed to produce an expert witness to discuss appellant's good candidacy for therapy; and stipulated that appellant's criminal acts caused an attempted suicide by one victim. Final Brief at 12, 18, 19.

■ The *Strickland* two-pronged test mentioned earlier applies to the effectiveness of counsel at trial. Upon consultation between appellant and his two defense counsel, appellant agreed not to call the two military witnesses even though they were willing to pay for their own transportation. Counsel "wanted to limit [any] cross-examination" of the character witnesses. *See, e.g., Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213,

93 L.Ed. 168 (1948); *United States v. Strong,* 17 MJ 263 (CMA 1984); *United States v. Stark,* 17 MJ 778 (AFCMR 1983). As to the expert concerning therapy, the defense had intended on calling the witness until they learned that their witness thought the "victims probably were more emotionally scarred worse than the Government's own expert acknowledged." Additionally, the expert thought appellant "posed a significant danger to the general public because" appellant did not think his sexual activity with the victims in this case "was wrong."

■ The information in the stipulation was the result of the pretrial negotiations which allowed the defense to keep some other damaging information away from the sentencing authority. *Cf. United States v. Glazier,* 26 MJ 268 (CMA 1988). We accept the explanations offered by the defense counsel and hold that as to Issue II, counsel exercised reasonable judgment.

The decision of the United States Army Court of Military Review and the action of the convening authority are set aside. The record of trial is returned to the Judge Advocate General of the Army for submission to an officer exercising general court-martial jurisdiction over the accused for consideration of the post-trial submissions and a new recommendation and action. Thereafter, the record will be returned to the Court of Military Review for further review and then will be forwarded directly to this Court.

Judges COX, GIERKE, and WISS concur.

SULLIVAN, Chief Judge (dissenting):

Appellant fired his assigned military defense counsel after trial on January 28, 1992. Then, *one day,* prior to the date for post-trial submissions, appellant re-retained his military lawyer and expressly directed him to submit matters which he would receive from his parents. The unwinnowed letter was one such matter, and the convening authority later reduced in effect the sentence from 25 years to 12 years in accordance with a pre-trial agreement. I see no unreasonable attorney action or prejudice in these circum-

stances. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). I agree with the court below and would affirm.