# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Airman First Class JOHN I. RODRIGUEZ
### United States Air Force

## ACM 38080 (rem)

## 05 March 2014

Sentence adjudged 18 November 2011 by GCM convened at Dover Air Force Base, Delaware. Military Judge: Michael J. Coco.

Approved Sentence: Bad-conduct discharge, confinement for 6 months, and reduction to E-1.

Appellate Counsel for the Appellant: Major Zaven T. Saroyan.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel C. Taylor Smith; Major Rhea A. Lagano; and Gerald R. Bruce, Esquire.

Before

ROAN, HARNEY, and MITCHELL
Appellate Military Judges

UPON REMAND

This opinion is subject to editorial correction before final release.

MITCHELL, Judge:

A general court-martial comprised of officer and enlisted members convicted the appellant, contrary to his pleas, of forcible sodomy with Senior Airman (SrA) DO, in violation of Article 125, UCMJ, 10 U.S.C. § 925. The court-martial acquitted the appellant of one specification of aggravated sexual assault and one specification of wrongful sexual contact against Airman First Class (A1C) KC, in violation of Article 120, UCMJ, 10 U.S.C. § 920. The adjudged and approved sentence consisted of a bad-conduct discharge, confinement for 6 months, and reduction to E-1.

On appeal, the appellant assigns four errors: (1) Trial defense counsel were ineffective by not sufficiently questioning a panel member about her experience as a victim of a similar offense and by not challenging her; (2) Trial defense counsel was ineffective when he conceded, after a litigated court-martial, the appellant's guilt during presentencing argument; (3) Trial defense counsel was ineffective when he conceded the appellant's guilt in the clemency request; and (4) The military judge abused his discretion by not sua sponte questioning the same panel member regarding her experience and dismissing her from the panel.

On 21 August 2013, we issued a decision denying the appellant relief. *United States v. Rodriguez*, ACM 38080 (A.F. Ct. Crim. App. 21 August 2013) (unpub. op.). The appellant then filed a petition for review with the Court of Appeals for the Armed Forces. On 13 November 2013, that Court granted the appellant's petition for review of the issue of whether the Court of Criminal Appeals panel that reviewed the case was properly constituted. *United States v. Rodriguez*, __ M.J. ___, No. 14-0127/AF (Daily Journal 13 November 2013). In the same order, the Court set aside our decision and remanded the case for further review and consideration of the panel constitution under Article 66(c), 10 U.S.C. § 866(c*). Id.*

Our decision today reaffirms our earlier decision dated 21 August 2013.

*Background*

At the time of trial, the appellant was a 23-year-old Airman First Class with slightly more than two years of service. The appellant was charged, but acquitted, on two specifications for offenses against A1C KC: aggravated sexual assault while she was substantially incapacitated, and wrongful sexual contact, each in violation of Article 120, UCMJ. The appellant was also charged with offenses against SrA DO: a specification alleging aggravated sexual assault while she was substantially incapacitated in violation of Article 120, UCMJ, and a specification alleging forcible sodomy in violation of Article 125, UCMJ. After findings, the military judge dismissed the Article 120 specification for the offense against SrA DO, as it was duplicative of the same act in the Article 125 charge. During sentencing, trial counsel argued for a dishonorable discharge and three years of confinement.

SrA DO and the appellant were friends, worked in the same building, and would occasionally watch movies together at SrA DO's residence. In March 2010, she and the appellant made plans for him to come to her house one night to have some drinks and watch a movie together. The appellant arrived with vodka and cranberry juice, and they started watching a movie in her living room. SrA DO had two drinks the appellant made for her and at some point she fell asleep. When she woke up, the appellant was performing oral sex on her. She jumped up and yelled at the appellant, who replied, "I'm sorry, I'm sorry." SrA DO told the appellant to get out of her house and he left.

Several months later, SrA DO and the appellant were conversing via Facebook instant messenger. During the conversation, SrA DO told the appellant he was "not a trustworthy guy." The appellant replied that she could say that because of "that one night." Later in the conversation, when SrA DO said she had been upset, the appellant replied, "who wouldnt[,] i took advantage[,] and i was wrong." The appellant also wrote, "…listen I know my mistakes and i regret this one and have since that day."

The appellant testified at trial. He said he went to SrA DO's house to make dinner for her and her son, and then stayed for drinks and a movie. He testified that during the movie he and SrA DO began to kiss and then it progressed to consensual oral sodomy.

*Ineffective Assistance of Counsel*

This Court reviews claims of ineffective assistance of counsel de novo. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009). When reviewing such claims, we follow the two-part test outlined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, the appellant has the burden of demonstrating: (1) a deficiency in counsel's performance that is "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;"[1] and (2) that the deficient performance prejudiced the defense through errors "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

The deficiency prong requires the appellant to show his defense counsel's performance fell below an objective standard of reasonableness, according to the prevailing standards of the profession. *Id.* at 688. The prejudice prong requires the appellant to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In doing so, the appellant "must surmount a very high hurdle." *United States v. Perez*, 64 M.J. 239, 243 (C.A.A.F. 2006) (quoting *United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000)); *United States v. Smith*, 48 M.J. 136, 137 (C.A.A.F. 1998). This is because counsel are presumed competent in the performance of their representational duties. *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001). Thus, judicial scrutiny of a defense counsel's performance must be "highly deferential and should not be colored by the distorting effects of hindsight." *Alves*, 53 M.J. at 289 (citing *United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997)).

To determine whether the presumption of competence has been overcome, our superior court has set forth a three-part test:

1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions?"

---

[1] U.S. CONST. amend. VI.

2.  If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers?"

3.  If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)) (alteration in original).

"[T]he defense bears the burden of establishing the truth of the factual allegations that would provide the basis for finding deficient performance." *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007) (citing *Polk*, 32 M.J. at 153). When there is a factual dispute, appellate courts determine whether further fact-finding is required under *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). If, however, the facts alleged by the defense would not result in relief under *Strickland*, the Court may address the claim without the necessity of resolving the factual dispute. *See Ginn*, 47 M.J. at 248.

## 1. Voir Dire and Challenge of MSgt RL

During voir dire, the military judge asked, "Has anyone or any member of your family or anyone close to you personally ever been the victim of an offense similar to any of those charged in this case?" Five court members gave affirmative responses, to include Master Sergeant (MSgt) RL. During individual voir dire of MSgt RL, both trial counsel and trial defense counsel asked her follow-up questions. MSgt RL revealed that she was the victim of a similar crime when she was 16 years old.[2] In response to trial counsel's question about whether the experience still weighed heavily on her, MSgt RL replied, "I rarely think about it now." MSgt RL also distinguished her experience from the allegations in the case, answering that it did not involve substantial incapacitation or the use of alcohol or drugs. MSgt RL answered that she was neither more nor less likely to believe an alleged victim, and that her prior experience would not affect her ability to be fair and sit in judgment at the court-martial.

Trial defense counsel asked MSgt RL an open-ended question:

Q.  Why do you feel like despite this traumatic event in your life that you're the right person to sit on this court-martial?

---

[2] At trial, counsel for each side typically has a copy of the court member data sheets, which presumably contain the information required by Rule for Courts-Martial (R.C.M.) 912(a), to include date of birth. The data sheets are not in the record of trial, and therefore this Court does not know when MSgt RL was 16 years old. However, based on common sense, our familiarity with promotions in the military, and MSgt RL's statement that she had "had a long time to recover," the Court can safely conclude it was at least a decade ago.

A. Well the situation is different, and I was younger then. I'm dealing with adults now, and I'm also older, and I've had a long time to recover. So I don't really think about it too much. It's something that's in the past.

Trial counsel challenged three members for cause, but did not challenge MSgt RL. After trial defense counsel did not challenge any member for cause, the military judge specifically asked the defense if they had any concerns about MSgt RL. Trial defense counsel replied that they had "considered her." Trial defense counsel did not challenge her. Trial counsel and trial defense counsel then used their preemptory challenges on other members.

Appellant asserts that his trial defense counsel were ineffective in their voir dire of MSgt RL, in that they did not ask sufficient questions of MSgt RL to make an informed decision on whether or not to challenge her, either for cause or for a preemptory challenge. Additionally, in his affidavit the appellant asserts his trial defense counsel advised him after their decision that they were trying to keep a certain number of people on the panel for "percentages."

The trial defense counsel provide in their court-ordered affidavits the reasons for not challenging MSgt RL. They explain they believed the contrast between MSgt RL's prior experience as a victim and the allegations in the court-martial would provide a "contrast that would benefit the defense." They also state, "Unequivocally, this decision was based strictly on our assessment of the demeanor of the member and her answers to our questions," and, "[W]e chose not [to] challenge MSgt [RL] based largely on her demeanor and tone as she answered questions during individual voir dire." Both trial defense counsel include the fact they did discuss with the appellant the issue of the "numbers game" or "percentages game," but that this did not influence their decision.

This issue can be addressed without the necessity of further fact-finding. *See Ginn*, 47 M.J. at 248. It is uncontroverted that the trial defense counsel discussed the issue of the "numbers game"[3] with the appellant. However, the record as a whole compellingly demonstrates the improbability that this was the sole reason why the trial defense counsel did not challenge MSgt RL. Even if they chose not to challenge her for cause, they still had the use of their preemptory challenge. The trial defense counsel exercised that challenge against a different member. Thus, if the only objective was to

---

[3] "From time immemorial fledgling judge advocates are taught about the 'numbers game,' a feature of criminal jurisprudence unique to the military justice system because only a two-thirds majority suffices to convict in all but capital cases. Thus, goes the folklore, a panel of five members optimizes the situation for an accused, because the necessity to round to the nearest member imposes a correspondingly greater burden of 80 percent (4 of 5 are needed to convict) on the prosecution. Correspondingly, any number divisible by 3 is optimal for the prosecution because it means it must get *no more than* the precise two-thirds needed for a conviction." *United States v. Simoy*, 46 M.J. 592, 627 (A.F. Ct. Crim. App. 1996) (Morgan, J., concurring) (*rev'd in part on other grounds*, 50 M.J. 1 (C.A.A.F. 1998)).

obtain a certain number of members on the panel, the trial defense counsel could have still used their preemptory challenge on MSgt RL.

The appellant provides a laundry list of additional questions that could have been asked of MSgt RL about her experience as a victim, to include the identity of the perpetrator, relation to the perpetrator, whether there were court proceedings, and the results of those proceedings. They are all questions that could have been asked of MSgt RL, but are not questions that were required in this case. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 690-91).

The appellant now asserts the voir dire was not thorough enough. We disagree. Trial defense counsel learned that MSgt RL was the victim of a sexual offense when she was 16, in a case that did not involve substantial incapacitation, alcohol, or drugs. Her experience involved a teenager, whereas the allegations concerned adults who either consented or were unable to consent. The trial defense counsel observed her demeanor throughout the process. In sum, the trial defense counsel had a thorough investigation of the relevant information regarding MSgt RL. Given the fact that the appellant testified and admitted to the underlying sexual acts, but disputed the victims were incapacitated and were instead willing participants, the defense made a reasonable determination to keep MSgt RL on the panel.

The appellant also fails to meet his burden on the second prong of *Strickland*. It is difficult for the appellant to argue that he was deprived of a fair trial with reliable results when he was acquitted of half of the specifications, and the members sentenced him to one-sixth of the trial counsel's recommended sentence to confinement along with a less severe punitive discharge.

### 2. Sentencing Argument

Appellant asserts his trial defense counsel conceded his guilt during the sentencing argument. As the sentencing argument is contained in the record, there is no need for an additional hearing. *See Ginn*, 47 M.J. at 248. We find this claim to be without merit.

During presentencing arguments, trial counsel argued for a sentence of a dishonorable discharge and three years confinement. Trial defense counsel began his sentencing argument with:

> Good morning, members. Members, a court-martial is tough. There are emotions. Witnesses have to come in. They have to think about things that make them uncomfortable. [SrA DO] had to come in and talk about things

that made her uncomfortable; that were embarrassing to her. There were embarrassing things that [the appellant] had to talk about. They're important things, so that you could arrive at the truth. Not just the truth of whether or not a crime was committed, but the truth of how you will sentence someone – what is the appropriate sentence – because we're sentencing someone faced [sic] on facts, not on just a crime; on the label of a crime. It is the aid [sic] of you who will forever know what the facts of the case were. People will hear about what [the appellant] was convicted of, and nobody will ever know again the facts on which it was based like you guys do. And that's important, because it's the facts that will get you to the appropriate sentence, not just the label of the crime.

Trial defense counsel went on to argue that a federal conviction is by itself a stigma, and that when the conviction is for a sexual assault there is an additional stigma. He continued:

And your sentence can either help his future or hurt his future. And quite frankly, the beginning and the end of a court-martial is the beginning of healing for both parties. [SrA DO] has come in and she's gotten her justice. She's had her day in court. It's the beginning of closure for both parties. Not just for [SrA DO], but also for [the appellant] who's had these charges hanging over his head for some time now. The sentence can set him on the right course towards rehabilitation."

Trial defense counsel later returned to this theme in arguing that any punitive discharge was not appropriate as it would only add to the stigmas already placed on the appellant. He continued with his argument for an appropriate lighter sentence than that recommended by trial counsel, arguing that a sentence that "crushed" the appellant would be counter-productive. Trial defense counsel argued against both a punitive discharge and confinement, and suggested hard labor without confinement as an alternative. The members sentenced the appellant to a bad-conduct discharge, confinement for 6 months, and reduction to E-1.

Our superior court wrote:

[I]n general, when an accused has consistently denied guilt, a functional defense counsel should not concede an accused's guilt during sentencing, not only because this can serve to anger the panel members, but also because defense counsel may be able to argue for reconsideration of the findings before announcement of the sentence.

*United States v. Wean*, 45 M.J. 461 (C.A.A.F. 1997).[4]

In *Wean*, the civilian trial defense counsel stated during sentencing argument that his client had "an illness of the mind [which] compelled him to do these things," even though his client had pled not guilty and there was no evidence to support this statement. *Id.* at 463 (alteration in original). By contrast, in this case trial defense counsel's comments are well within the standards of an effective argument. The appellant selectively quotes portions of the sentencing argument to imply his counsel conceded his guilt, but reading the argument in its entirety does not reveal any concession of the nature found in *Wean*. Rather, trial defense counsel's argument was an effort to turn the members' attention from their deliberations on findings, and what happened in the past, to the future of the appellant and how that future would be influenced by their sentence. While acknowledging the members' decision on findings, trial defense counsel never conceded his client was guilty. Rather he used the principles of sentencing in an attempt to persuade the members that a punitive discharge and confinement were not appropriate, while hard labor without confinement was more appropriate.

While trial defense counsel did not receive all that he asked for, the adjudged sentence was significantly less than what the trial counsel asked for, particularly in light of the maximum punishment authorized. We find the appellant has failed to meet his burden on both of the *Strickland* prongs.

*3. Clemency Request*

In clemency, the appellant asked to be released from confinement and to have his bad-conduct discharge mitigated to an administrative discharge. In his signed submission, he wrote, "Yes, I messed up, but I am only human and I have done everything else to the best of my ability. . . . I am truly sorry for my lack of better judgment . . . ." He also wrote:

> I beg you to not let this one mistake take judgment on my whole life. I understand what I've done was wrong, but I still want to have a future and I feel like this can either make me or break me. The Air Force was my biggest treasure and if I had the chance to do it all over again, I would, with the exception of the fault I have made.

Trial defense counsel also wrote a request for clemency on behalf of his client, in which he stated:

---

[4] At the time of the *Wean* trial, members were allowed to reconsider findings of guilty at any time before announcement of the sentence. *United States v. Wean*, 45 M.J. 461, 464 n.4 (C.A.A.F. 1997). Currently, R.C.M. 924 allows members to reconsider findings before they are announced in open court, and only the military judge sitting alone can reconsider findings after they have been announced, but before announcement of a sentence. *Id. See also* Drafter's Analysis, *Manual for Courts-Martial, United States*, A21-72 (2012 ed.).

In reviewing this case you will find that immediately after the investigation against [the appellant] began and leading up until his trial, [the appellant] was an above average performer who exhibited no negative behaviors and who had received no negative paperwork during his short time in the Air Force. As you can see from his First Sergeant's letter, [the appellant] is not what some may consider the "typical" criminal. . . . I believe you will find that [the appellant] has truly learned from his mistakes. . . . This young man has so much life and enthusiasm and all he asks is that we do not snuff it all out due to this mistake.

In his court-ordered affidavit, the trial defense counsel explained his reasoning in using the word "mistake." It was a word the appellant had included in his written clemency request, and trial defense counsel employed it to "lessen the sting" and minimize the offense. He was arguing that the appellant was an above-average performer who "kept his head high" during the court-martial process, and therefore was someone who did not deserve a punitive discharge. Trial defense counsel recognized there was no legal challenge to the court-martial panel's conviction and "taking a 'hard line' and continuing to litigate the case in clemency" was not likely to be successful, and instead believed any chance at clemency would be based upon equity. The convening authority approved the sentence as adjudged.

The right to effective representation extends to post-trial proceedings. *United States v. Cornett*, 47 M.J. 128, 133 (C.A.A.F. 1997). Defense counsel is responsible for post-trial tactical decisions but should act "after consultation with the client where feasible." *United States v. MacCulloch*, 40 M.J. 236, 239 (C.M.A. 1994). Defense counsel may not submit matters over the client's objection. *United States v. Hood*, 47 M.J. 95, 97 (C.A.A.F. 1997).

We need not decide if defense counsel was deficient during post-trial representation if the second prong of *Strickland* regarding prejudice is not met. *United States v. Saintaude*, 61 M.J. 175, 183 (C.A.A.F. 2005). Our superior court has held that errors in post-trial representation can be tested for prejudice, which will be found if "the appellant 'makes some colorable showing of possible prejudice.'" *United States v. Lee*, 52 M.J. 51, 53 (C.A.A.F. 1999) (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)).

Here the affidavits of the appellant and trial defense counsel both indicate the appellant did not see the letter written by trial defense counsel before it was submitted to the convening authority. While this may not be the best course of action, the letter by trial defense counsel used much of the same language as the appellant did in his own request. Much like trial defense counsel during sentencing argument, the appellant acknowledged poor decision-making without ever admitting guilt. This ambiguous accountability enabled the appellant to take some responsibility without admitting to a

crime. The convening authority can decide if the appellant meant a mistake in terms of continuing to pursue a physical relationship with a married woman, who had expressly told him she was not interested (which is not necessarily a crime, but can clearly be described as a mistake), or if the appellant meant some other mistake in terms of his interactions with SrA DO. The trial defense counsel continued with this theme when he asked the convening authority to substitute an administrative discharge in lieu of a bad-conduct discharge and for leniency in an early release of confinement.

Trial defense counsel referred to the appellant as not "the 'typical' criminal." While this may be an unusual way for a defense counsel to refer to his client, it is accurate. A "criminal" is "a person guilty of, or legally convicted of, a crime." *Webster's New World Dictionary of American English* 328 (3d ed. 1988). While the appellant disputes he is guilty of the offense, he was legally convicted of the offense. The overall point of the trial defense counsel's paragraph is the appellant was an above-average performer at work who continued to do well even while pending court-martial. Additionally, trial defense counsel was aiming for the point not to judge the appellant based on the one offense he was convicted of, but instead to view him as a young man with great potential as reflected in the clemency letters. Beyond that, the clemency request from his attorney echoed the statements the appellant chose to submit to the convening authority. We find the appellant has failed to reach the low threshold of a colorable showing of possible prejudice.

*4. Military Judge's Decision Not to Sua Sponte Excuse MSgt RL*

After both trial counsel and trial defense counsel used their preemptory challenges on other members, MSgt RL remained on the panel. The military judge did not sua sponte excuse MSgt RL or any other member.

This Court has previously ruled:

Failure to make a challenge for cause for a ground listed under R.C.M. 912(f)(1) or any other ground is waived if the party knew of the ground for challenge and failed to raise it in a timely manner. R.C.M. 912(f)(4). If counsel fail to make a challenge for cause, the military judge may, in the interest of justice, excuse a member against whom a challenge for cause would lie. *Id.* However, this provision is permissive in nature and the military judge is not required to excuse such members. A military judge is not required to second guess the tactical decision of a counsel not to raise a challenge for cause when counsel are obviously aware that grounds exist for such challenge.

*United States v. Davis,* 29 M.J. 1004, 1007 (A.F.C.M.R. 1990), *aff'd*, 33 M.J. 13 (C.M.A. 1991); *United States v. Lopez*, 37 M.J. 702, 705 (A.C.M.R. 1993).

Trial defense counsel were clearly aware of the issue of MSgt RL's experience of being a victim of a similar offense, yet they chose not to challenge her for cause, and again chose not to challenge her for cause after the military judge specifically mentioned her. They chose to exercise their preemptory challenge on another member. The appellant has unequivocally waived this issue.

Without addressing the waiver language in R.C.M. 912(f)(4), and without explicitly overturning *Davis* and *Lopez*, our superior court has determined that a trial judge's decision whether or not to excuse a member for cause sua sponte is reviewed for an abuse of discretion. *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004). Our superior court reasoned that regardless of any tactical reasons by the trial defense counsel for not challenging a member, "the question remains whether based on the totality of the circumstances . . . the military judge should have dismissed [the court member] sua sponte in order to ensure public confidence in the legality, fairness, and impartiality of Appellant's court-martial." *Id.* at 459 (citing *United States v. Velez*, 48 M.J. 220, 225 (C.A.A.F. 1998)).

There is no per se disqualification when an individual court member, or someone close to that member, either a family member or friend, has been the victim of a similar crime as the one charged at the court-martial. *See United States v. Calimata*, 48 M.J. 917, 923 (A.F. Ct. Crim. App. 1998) (court member raped as a 15-year-old not disqualified in indecent assault case); *United States v. Terry*, 64 M.J. 295, 304 (C.A.A.F. 2007) (member who indicated his wife had been the victim of sexual assault by stepfather not disqualified in rape case, but member with close relationship to another rape victim was disqualified); *United States v. Brown*, 34 M.J. 105 (C.M.A. 1992) (father of a victim of homosexual assault not disqualified in a consensual sodomy case).

MSgt RL distinguished on a factual basis why her prior experience was different than the charges on the flyer she reviewed. She clearly articulated why her prior experience as the victim of a sexual offense would not influence her decision in the current court-martial. Both the military judge and the trial defense counsel were able to observe her demeanor in answering the questions posed to her throughout voir dire. Based on the totality of the circumstances, we find the trial judge did not abuse his discretion by not sua sponte excusing MSgt RL.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred.[5] Articles 59(a)

---

[5] Though not raised as an issue on appeal, we note the overall delay of more than 540 days between the time of docketing and the first opinion by this Court is facially unreasonable. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Article 66(c), UCMJ, 10 U.S.C. § 866(c) empowers the service courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ. *United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). Having considered the totality of the circumstances and the entire record,

and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c); *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). Accordingly, the approved findings and sentence are

AFFIRMED.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

we find the appellate delay in this case was harmless beyond a reasonable doubt. *Moreno*, 63 M.J. at 135-36 (reviewing claims of post-trial and appellate delay using the four-factor analysis laid out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Furthermore, given the totality of the circumstances and the entire record, we conclude that sentence relief is not justified. *United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006); *Tardif*, 57 M.J. at 224.

ACM 38080 (rem)