# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, HERRING, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Captain DWAYNE M. WILLIAMS**
**United States Army, Appellant**

ARMY 20140924

Headquarters, I Corps
Samuel A. Schubert, Military Judge (arraignment)
Andrew J. Glass, Military Judge (trial)
Colonel Randall J. Bagwell, Staff Judge Advocate

For Appellant: Lieutenant Colonel Charles D. Lozano, JA; Captain Heather L. Tregle, JA; Captain Matthew D. Bernstein, JA (on brief).

For Appellee: Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Melissa Dasgupta Smith, JA; Captain Vincent S. Scalfani, JA (on brief).


21 December 2016

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

PENLAND, Judge:

Appellant's trial defense team performed deficiently in preparing for and conducting his direct examination during the findings phase of the case. However, considering the overwhelming evidence of appellant's guilt already presented by government counsel, we conclude appellant suffered no prejudice from the deficiency.

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of indecent act, two specifications of aggravated sexual assault, two specifications of assault consummated by battery, and two specifications of conduct unbecoming an officer in violation of Articles 120, 128, and 133, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 928, 933 (2006 & Supp. IV). The convening authority approved the adjudged sentence of a dismissal from the Army and confinement for eight years.

We review this case under Article 66, UCMJ. Appellant assigns three errors, asserting ineffective assistance of counsel, factual and legal insufficiency, and dilatory post-trial processing. The first merits discussion but no relief; the second and third merit neither. We have considered matters personally asserted by appellant under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and shall discuss some aspects of his complaint regarding his counsel. We shall also briefly discuss and partially grant relief based on his complaint of an unreasonable multiplication of charges. The remainder of appellant's personally-raised matters lack merit. Finally, based on our superior court's decision in *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), we conclude the military judge erred in considering evidence supporting the charged sexual misconduct offenses as evidence of appellant's propensity to commit the charged sexual misconduct; however, we hold the error to be harmless beyond a reasonable doubt.

## BACKGROUND

### A. *The Government's Case*

In October 2013, LN, an intimate acquaintance of appellant, reviewed the contents of appellant's computer thumb drive. She immediately became concerned when she found multiple photos and a video on the thumb drive that depicted apparently-unconscious women in various states of undress as sexual acts were performed upon them by appellant. She also found a spreadsheet file that contained a list of dozens of women with whom appellant either had or desired sexual activity. LN obtained her own thumb drive, transferred copies of the spreadsheet and images to it, and then relinquished her thumb drive to a senior noncommissioned officer, who provided it to Army Criminal Investigation Command (CID).[1] LN returned the original thumb drive to appellant, who was clamoring for it.

CID's examination of the thumb drive led to First Lieutenant (1LT) AO and 1LT AP. Multiple photos admitted in the government's case show 1LT AO's and 1LT AP's partly naked bodies; in some of them, 1LT AP's three-year-old daughter is lying next to her. The photos also depict, *inter alia*, appellant's hand touching 1LT AO's genitalia and his penis touching 1LT AP's genitalia. The video file admitted in the government's case shows appellant's erect penis penetrating 1LT AP from behind as her daughter remains at her side. In all of these images, the females are clearly unconscious; the video captured the sound of either 1LT AP or her daughter snoring.

---

[1] The military judge denied appellant's motion to suppress the contents of the thumb drive provided to CID.

With respect to 1LT AP, appellant was charged with, *inter alia*, two specifications of aggravated sexual assault. Specification 5 of Charge I alleged penile penetration while she was substantially incapable of declining participation. Specification 6 of Charge I alleged penetration by causing bodily harm to her.

First Lieutenant AO and 1LT AP testified that they became casual acquaintances with appellant and, one evening in the fall of 2011, went to his home, bringing 1LT AP's daughter with them. First Lieutenant AO described falling asleep after drinking several alcoholic beverages; she was awakened by the sensation of someone near her, immediately realized appellant was attempting to engage in sexual intercourse with her and told him to stop. First Lieutenant AP also described falling asleep after drinking approximately two alcoholic beverages; however, she testified she remained asleep throughout the night. Both victims identified themselves as the unconscious women depicted in the images introduced by the government.

The military judge partly granted a government's motion under Military Rule of Evidence [hereinafter Mil. R. Evid.] 413 to allow testimony of LTs AP and AO and evidence included in Prosecution Exhibits 12 and 15 (images of 1LT AO and 1LT AP, respectively) to be used as propensity evidence as to the charges involving each other.

## B. The Defense's Case

Appellant's testimony was preceded by a peculiar exchange between the military judge and the parties. The military judge explained that in an 802 session civilian defense counsel notified him of issues he was having with his back due to a recent back surgery and that he had taken pain medication. When the military judge asked civilian defense counsel if he was "competent to proceed," he responded:

> CDC: Absolutely, Your Honor. I'm fully aware on a 24/7 basis of my obligation, my oath, and I give you my professional word that I believe that I'm ready to proceed, and I believe, that I portrayed it explicitly to my client prior to taking it and [] that he gave his consent.

The military judge asked if defense counsel wanted a break or continuance, and civilian defense counsel responded, "I need no time to proceed to put my client on the stand." Then the military judge asked appellant if he believed "the pain medication or pain has impacted [civilian defense counsel's] ability to represent you in any way?" Appellant said, "I think he's good to go, sir" and "Yes, sir, I'm confident that he's able to proceed." Next, the military judge addressed military defense counsel to make sure he knew to intervene if he thought there were any issues. The military judge said, "Defense, you may proceed," and civilian defense

3

counsel, asked, "Government has rested now, clearly?"[2] The military judge confirmed this and appellant was called to the stand.

Appellant told the court-martial 1LT AO and 1LT AP came to his home on the evening in question, along with 1LT AP's daughter. Appellant described a night of "ridiculous" alcohol consumption among the three adults. He admitted having sexual intercourse with 1LT AP, and while he said she was affected by alcohol consumption, he claimed the intercourse was consensual.

After about one hour of conducting direct examination of the appellant, civilian defense counsel offered to pass him to government counsel for cross-examination. The military judge asked civilian defense counsel if he had been able to ask all the questions he wanted, and civilian defense counsel responded affirmatively. Military defense counsel agreed with this assessment. Then, civilian defense counsel said, "This time I feel perfectly fine to get all the way through. *It's just the body is not following.*"

After a brief recess, the military judge allowed appellant's military defense counsel to resume direct examination. First, however, the military judge asked civilian defense counsel, "[A]re you capable of continuing here today?" Civilian defense counsel responded, "As an officer of the court, I assure you that I am." When the military judge asked if he was competent to continue, civilian defense counsel responded, "As competent as I was coming in." The military judge then described his observations of civilian defense counsel up to this point, concluding, "I see...no issues of competence."

With military defense counsel now at the helm, direct examination continued with appellant's explanation for the photographs. In the following exchange with his military defense counsel, appellant offered context for the photos. They were drinking and started talking about initiation rituals in fraternities and sororities because appellant was unfamiliar with the topic. Appellant testified that the victims described a drinking game in which a piece of clothing is removed after each shot of alcohol consumed, and the participants take pictures. He described the point of the pictures as:

> A trust thing . . . you take embarrassing pictures . . . the
> females may . . . put their vagina in [] face [of the male
> being initiated] or their butt in their face or breasts on
> them. You know, write something on their chest or it's
> like anything goes. But, the rule is at the end of the day,
> nobody talks about it.

---

[2] The defense had already presented testimony from five witnesses.

When asked how much alcohol they had consumed by this point, appellant said, "We were pretty deep in . . . we started off with mixed drinks . . . and then . . . we had two bottles of different kind of Cîroc. And we just started taking shots together. . . The second bottle was all part of the game and we finished both bottles of Cîroc." The direct examination continued:

> DC: Was it your understanding that prior to finishing both bottles of Cîroc, [1LT AP] and [1LT AO] had consented to you taking the pictures that were shown here in this courtroom?
>
> ACC: Yes, because that's what we discussed. It was part of the initiation and as long--and they said, you know, it doesn't go out. It's between us and this is how we bond and as long as it doesn't go out, you know, we take care of each other; basically that, you know.

### C. Affidavits of Defense Counsel

This court ordered affidavits in response to appellant's allegations of ineffective assistance of counsel. With respect to appellant's allegation that his defense team did not adequately prepare him to testify, military defense counsel wrote:

> I prepared from the beginning as though this would be a contested court-martial. . . . I spoke with CPT Williams on numerous occasions about the court-martial process, about the allegations against him, and about potential courses of actions. On at least one occasion, I had CPT Williams come to my office and go through every picture and video that the government had provided which formed the basis of any allegation against him.
>
> As stated above, I had more than one discussion with CPT Williams where he and I discussed the charges against him and the possibility that he would have to testify at trial. Although I never sat down with him and did a practice direct or cross-examination, we did discus his defense and in general what he should say and what might be asked if he testified. The night before CPT Williams testified, he had decided to take the stand. [Civilian defense counsel], along with his wife who served as his paralegal, discussed with me that they would prepare him, which I assumed included a practice, for the next day's testimony. At this

point, I was working on other parts of the trial and asked [civilian defense counsel] if he needed me to stay and assist or if I could leave and work on the other issues. They were fine with me leaving, and I did leave at some point later that night. When I left, CPT Williams was in the conference room with both [civilian defense counsel] and his wife and had not left for some time. I have no reason to doubt that they were in there doing exactly what they said, preparing CPT Williams for his testimony.

I observed [civilian defense counsel] from his arrival over the weekend before the court-martial until he departed at the conclusion of the trial. I observed no difference in his performance at trial, his speech, or his thought processes after he took his medication as compared to before he took his medication.

(Internal paragraph numbers omitted)

Civilian defense counsel wrote:

Counsel was fully prepared to proceed with a full court martial trial by studying all of the evidence provided, consulting with [military defense counsel] and many many conversations with my client....

[. . . .]

The appellant was prepared to testify by not only myself, but by [military defense counsel] and my paralegal [] all separately. [CPT] Williams['s] complaint that he was not fully prepared is false. He was told exactly what was going to be asked and take place. It is common knowledge that whatever is brought out on any direct, albeit defense or prosecution, opens doors to the opposition[']s line of questioning upon cross[-]examination. Various conversations were had by both counsel and my paralegal did the final preparation in person the day [appellant] was going to testify. It is important to note that our paralegal has been preparing witnesses for over 30 years and studied the subject extensively.

[I] was fit and in good shape. One day and only one, before even ingesting any kind of medication, I called it to

the court[']s attention that my back was giving me quite a problem. Standing and sitting were becoming more and more painful. I spoke to the court and told them I had pain prescribed medication with me. The court, Judge Andrew Glass, questioned me extensively with regard to my ability to carry on. Judge Glass watched my performance and noted on the record [] that he saw no effects whatsoever with my having taken [medication]. At no time did counsel have any trouble speaking or enunciating his words.

(Internal paragraph numbers omitted.)

## LAW AND ANALYSIS

### A. Assistance of Counsel

Military accuseds have a Constitutional and codal right to the effective assistance of counsel at trial. *United States v. Bolkan*, 55 M.J. 425, 427 (C.A.A.F. 2001) (citing U.S. Const. amend. VI; art. 27, UCMJ; and *United States v. MacCulloch*, 40 M.J. 236 (C.M.A. 1994)); *see also United States v. Gooch*, 69 M.J. 353, 361 (C.A.A.F. 2011). "The right to counsel is probably the paramount right in ensuring that the adversarial system functions properly." *Bolkan*, 55 M.J. at 427. We review de novo claims that an appellant did not receive effective assistance of counsel. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009).

"In assessing the effectiveness of counsel we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984)." *Gooch*, 69 M.J. at 361. To overcome the presumption of competence, the *Strickland* standard requires appellant to demonstrate "both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687 and *Mazza*, 67 M.J. at 474). An appellant is prejudiced by counsel's deficient performance where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015).

The Rules of Professional Conduct for Lawyers applicable to military counsel make it clear an attorney shall abide by the client's decision to testify or not. Army Reg. 27-26, Rules of Professional Conduct for Lawyers, Appx. B. R. 1.2 (Scope of Representation)(1 May 1992).

"Where an accused is represented by both civilian counsel and detailed military counsel, the performance of defense counsel is measured by the combined efforts of the defense team as a whole." *United States v. Boone*, 42 M.J. 308, 313 (C.A.A.F. 1995); *see also United States v. McConnell*, 55 M.J. 479, 481 (C.A.A.F. 2001).

After reviewing the record, appellant's affidavit and other submissions, and counsels' affidavits, we make the following observations. The government's case overwhelmingly established appellant generated and maintained photographs and a video recording of his sexual assaults of 1LT AO and 1LT AP. Appellant decided to testify, a decision his defense team was bound to honor. While civilian defense counsel assured the military judge he was physically able to proceed before beginning his direct examination, his sense of obligation to disclose his medical condition, his somewhat rambling approach in questioning appellant—including topics that were irrelevant to any disputed facts—and his ultimate physical breakdown lead us to find him deficient in his direct examination of appellant. We recognize military defense counsel's initiative in trying to make the best of a bad situation by continuing the direct examination, but this action was also deficient, for his affidavit makes clear he was not involved in preparing appellant for this critical phase of the case. Finally, given the military judge's clear indications that he was amenable to continuance, appellant's defense team should have sought to postpone the case in order to better set conditions for presenting appellant's testimony.

Based on the foregoing, we conclude appellant's counsel performed deficiently in handling his direct examination. However, appellant has not met his burden to establish a reasonable probability of a different verdict had his counsel performed in a tactically reasonable manner.[3]

### B. *Unreasonable Multiplication of Charges*

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Rule for Courts-Martial [hereinafter R.C.M.] 307(c)(4). The prohibition against unreasonable multiplication of charges (UMC) "addresses those features of military law that increase the

---

[3] Based on this prejudice analysis, we decline to address appellant's other claims of ineffective assistance (e.g., that no one on his defense team helped him prepare to testify). A hearing pursuant to *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967) is not necessary to decide this appeal, for the matters appellant personally alleges "would not result in relief even if any factual dispute were resolved in [his] favor." *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997).

potential for overreaching in the exercise of prosecutorial discretion." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012) (quoting *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001)).

Appellant personally asserts Specifications 5 and 6 of Charge I constitute an unreasonable multiplication of charges.[4] We agree. This is not a case where the accused begins a sexual assault upon a sleeping victim, who then wakes up and says no, only to have the accused continue to sexually assault him or her. *See e.g.*, *United States v. Marsh*, ARMY 20120572, 2016 CCA LEXIS 362, at *22 (Army Ct. Crim. App. 31 May 2016); and *United States v. Montoya*, ARMY 20150211, 2016 CCA LEXIS 701, at *5-6 (Army. Ct. Crim. App. 29 Nov. 2016). Here 1LT AP testified that she fell asleep and she remained asleep through the night. The government agreed the military judge should merge Specifications 5 and 6 of Charge I for sentencing. Perhaps exigencies of proof motivated the government's charging decision-in which case *United States v. Elespuru*, 73 M.J. 326, 329-30 (C.A.A.F. 2014), would control-but we are ill-equipped to make that determination where defense counsel made no motion for appropriate relief as to findings at trial and forfeited the error. We give great weight to our determination that under the facts and circumstances of this case, two convictions for aggravated sexual assault unreasonably exaggerate appellant's criminality. *Quiroz*, 55 M.J. at 338.

### C. *Propensity Evidence*

Though not raised by appellant, we recognize, in light of *Hills*, the military judge committed constitutional error in granting government counsel's motion to consider evidence of certain charged offenses as evidence of appellant's propensity to commit other charged offenses. A constitutional error must be harmless beyond a reasonable doubt for an appellate court to affirm the resultant conviction or sentence. *United States v. Bush*, 68 M.J. 96, 102 (C.A.A.F. 2009) (internal citations omitted). "Military judges are presumed to know the law and to follow it absent clear evidence to the contrary." *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citing *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997)).

Here, we find no risk that the military judge applied an impermissibly low standard of proof concerning both the presumption of innocence and the requirement that the prosecution prove guilt beyond a reasonable doubt. *See e.g.*, *United States v. Hukill*, ARMY 20140939, 2016 CCA LEXIS 505, at *5 (Army Ct. Crim. App. 16 Aug. 2016). The record—including the military judge's findings—demonstrate beyond a reasonable doubt that this error was harmless.

---

[4] The government's brief contains no response to this argument.

First, the evidence pertaining to 1LT AO alone, including the photographic images of her, was sufficiently overwhelming to eliminate any reasonable doubt that appellant assaulted her. The same holds true for 1LT AP, particularly where appellant also made a video recording of his aggravated sexual assault. Second, the military judge found appellant not guilty of four specifications of aggravated sexual assault with respect to 1LT AO.[5] These findings demonstrate beyond a reasonable doubt that, notwithstanding the erroneous propensity ruling, the military judge clearly understood and held the government to its burden of proving appellant's guilt beyond a reasonable doubt. *Id.*; *see also United States v. Guardado*, ARMY 20140014, 2016 CCA LEXIS 664, at * 30 (Army Ct. Crim. App. 15 Nov. 2016).

## CONCLUSION

The finding of guilty to Specification 6 of Charge I is set aside and that specification is DISMISSED. The remaining findings of guilty are AFFIRMED. We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). We are confident that based on the entire record and appellant's course of conduct, the military judge would have imposed a sentence of at least that which was adjudged, and accordingly we AFFIRM the sentence.

We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by our decision, are ordered restored.

Senior Judge CAMPANELLA and Judge HERRING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[5] With respect to two of these specifications, the military judge found appellant guilty of the lesser included offense of assault consummated by a battery, in violation of Article 128, UCMJ.