# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Airman First Class JOE A. MONTOYA, IV
### United States Air Force

## ACM 38116 (recon)

## 17 July 2014

Sentence adjudged 29 February 2012 by GCM convened at Luke Air Force Base, Arizona. Military Judge: Joseph S. Kiefer (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 42 months, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Scott W. Medlyn and Captain Michael A. Schrama.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel C. Taylor Smith; Major Daniel J. Breen; Major Rhea A. Lagano; and Gerald R. Bruce, Esquire.

Before

ALLRED, HARNEY, and MITCHELL
Appellate Military Judges

OPINION OF THE COURT
UPON REMAND

This opinion is subject to editorial correction before final release.

HARNEY, Senior Judge:

In accordance with his pleas, the appellant was convicted by a military judge sitting as a general court-martial of one specification of rape by using force against another person, in violation of Article 120, UCMJ, 10 U.S.C. § 920. The military judge sentenced the appellant to a dishonorable discharge, confinement for 42 months, total

forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the sentence as adjudged.[1]

*Procedural History*

On 25 June 2013, the Secretary of Defense, "[p]ursuant to [his] authority under title 5, United States Code, section 3101 *et seq.*," issued a memorandum that "appoint[ed] Mr. Laurence M. Soybel, a civilian employee of the Department of the Air Force, to serve as appellate military judge on the Air Force Court of Criminal Appeals." Memorandum from Sec'y of Def. Chuck Hagel for Sec'y of the Air Force Eric Fanning, (25 June 2013).

When the appellant's case was initially before us, the appellant raised three issues for our review: (1) improper argument by trial counsel; (2) ineffective assistance of counsel;[2] and (3) sentence severity.

On 14 August 2013, we issued a decision denying the appellant relief. *United States v. Montoya IV*, ACM 38116 (A.F. Ct. Crim. App. 14 August 2013) (unpub. op.). Pursuant to his appointment by the Secretary of Defense, Mr. Soybel was a member of the panel. The appellant moved our superior court to vacate the decision on the basis of Mr. Soybel's participation, and on 31 October 2013, our superior court converted the appellant's motion to vacate, which was pending before our court, into a motion for reconsideration. *United States v. Montoya IV*, 73 M.J. 91 (C.A.A.F. 2013) (mem.). On 15 April 2014, our superior court issued its decision in *United States v. Janssen*, 73 M.J. 221, 225 (C.A.A.F. 2014), holding that the Secretary of Defense did not have the legislative authority to appoint civilian employees as appellate military judges and that his appointment of Mr. Soybel to this Court was "invalid and of no effect."

In light of *Janssen*, we granted the motion for reconsideration on 29 April 2014 and permitted the appellant to file a supplemental assignment of errors. The appellant submitted a supplemental assignment of errors, asserting he is entitled to relief due to unreasonable appellate delay. With a properly constituted panel, we have reviewed the appellant's case, to include the appellant's previous and current filings and the previous opinions issued by this Court. Finding no error that materially prejudices a substantial right of the appellant, we affirm the findings and sentence.

---

[1] Pursuant to the terms of a pretrial agreement, the convening authority agreed to cap confinement at 10 years and dismiss one charge and one specification of sodomy, in violation of Article 125, UCMJ, 10 U.S.C. § 925. That charge was withdrawn and dismissed after arraignment.

[2] This issue was raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

*Background*

On 28 October 2011, the appellant went to an on-base party, where he met the 18-year-old civilian victim, JT. After a night of drinking alcohol, the appellant asked if someone would walk him back to his dorm room. JT offered to walk him back. While in his room, the appellant and JT engaged in consensual kissing. The appellant began to take off JT's clothing. JT told the appellant she did not want to have sexual intercourse with him. The appellant continued to remove JT's clothing and put his penis in her vagina despite her telling him several times "no" and "stop." JT physically resisted by using her hands to push against the appellant's chest, but the appellant used his body weight to hold JT down. After a few minutes, the appellant stopped having sexual intercourse with JT. JT got dressed and left.

*Improper Argument*

During sentencing argument before the military judge, trial counsel made several statements the appellant claims were improper and amounted to prosecutorial misconduct. The appellant asserts that trial counsel argued facts not in evidence before the court. Those comments consisted of trial counsel arguing that the appellant's actions were both service-discrediting and impacted good order and discipline in the armed forces, as well as arguing that the victim inherently trusted the appellant due to his status as a military member. Because trial defense counsel failed to object to trial counsel's argument, we review the issue for plain error. *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007); *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001). "To prevail under a plain error analysis, [the appellant] must demonstrate that: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right [of the appellant]." *Erickson*, 65 M.J. at 223 (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). We conclude that trial counsel did not engage in misconduct through any comments made during the sentencing argument and find no plain error.

At the beginning of his argument, when proposing a punishment, trial counsel pointed out that "a civilian of the local community was raped . . . by the accused." Trial counsel then asked rhetorically, "Did his crime bring dishonor upon the United States Air Force? Absolutely." Trial counsel continued:

> And there's no one in this room who can say the accused, who was just found guilty of rape, maintains the basic standard of a member of the Air Force and should be walking around freely. The accused raped a civilian who is supposed to trust an Air Force member to keep her safe.

Soon thereafter, in the context of arguing for confinement, trial counsel referred to the victim's trauma:

She's having a hard time going through the day. . . . [H]er school has been affected. Her life has been turned upside down and she can't even live a normal student life anymore. All of this happened because she trusted a military member, because she wanted to help a military member who she thought would keep her safe.

In the context of arguing for a dishonorable discharge, trial counsel asserted, "What [the appellant] did had a direct impact . . . on [JT] and the United States Air Force. Civilians are supposed to trust military members to keep her safe and nothing [sic] ever happened to her." Trial counsel continued, "The accused has brought dishonor to the United States Air Force, including all the members like you and me." Trial counsel urged the military judge to tell "[JT], her father and mother and all those who wonder about our military system and what would happen if you rape someone, all military members should be able to say the United States Air Force is here to protect them." Trial counsel wrapped up the argument by again focusing the military judge on the gravity of the crime and the victim's civilian status: "[Y]ou can say to our civilian community that the United States Air Force is protecting them by sending the right message."

"A trial counsel is charged with being a zealous advocate for the Government." *United States v. Barrazamartinez*, 58 M.J. 173, 176 (C.A.A.F. 2003) (citing *United States v. Nelson*, 1 M.J. 235, 238 (C.M.A. 1975)). As a zealous advocate, trial counsel may "argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000) (citing *United States v. Edwards*, 35 M.J. 351 (C.M.A. 1992)). *See also Nelson*, 1 M.J. at 239. During sentencing argument "trial counsel is at liberty to strike hard, but not foul, blows." *Baer,* 53 M.J. at 237. Trial counsel may not "seek unduly to inflame the passions or prejudices of the court members." *United States v. Clifton*, 15 M.J. 26, 30 (C.M.A. 1983) (citing *United States v. Shamberger*, 1 M.J. 377 (C.M.A. 1976)).

In this case, the appellant, an Air Force member, raped an 18-year-old girl from the local civilian community in a dormitory room on an Air Force base. When viewed in the context of the entire court-martial, we find trial counsel's comments to not only be fair but, also reasonable inferences fairly derived from the evidence. *See Gilley*, 56 M.J. at 121. The victim testified about the ongoing trauma she suffered because of the rape. She testified how she continually had flashbacks to the rape, how the incident affected her relationship with her parents, and how it partially contributed to her leaving school. One may reasonably infer from the evidence, as did trial counsel, that the appellant's conduct dishonored the Air Force, fell below the standards expected of Airmen, and violated the trust that the victim placed in the appellant when she agreed to walk him back to his room. Additionally, trial counsel's comments urging the military judge to send the "right message" to the civilian community fairly embodies the generally accepted sentencing philosophies, which include general and specific deterrence and social retribution. Rule for Courts-Martial 1001(g). The lack of any objection by defense

counsel is some measure of the minimal impact of trial counsel's argument. *See Gilley*, 56 M.J. at 123.

Finally, while the appellant rightfully notes that trial counsel may not "unduly . . . inflame the passions or prejudices of the court members," the sentencing authority in this case was a military judge, sitting alone. *Clifton*, 15 M.J. at 30. Even if trial counsel's comments were improper, military judges are presumed to know the law and to follow it absent clear evidence to the contrary. *Erickson*, 65 M.J. at 225 (citing *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997)). Here, there is no evidence to rebut that presumption, and no court member was unduly inflamed in this judge alone trial.

*Ineffective Assistance of Counsel*

The appellant next argues his trial defense counsel was ineffective for two reasons: (1) for failing to advise him about his options for waiver and deferment of forfeitures, and (2) for failing to submit substantive clemency matters to the convening authority. We disagree and find trial defense counsel was not ineffective during his post-trial representation of the appellant. We also conclude that a fact-finding hearing is not necessary for us to resolve this issue. *United States v. Ginn*, 47 M.J. 236, 244-45 (C.A.A.F. 1997).

This Court reviews claims of ineffective assistance of counsel de novo. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009). When reviewing such claims, we follow the two-part test outlined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007). Our superior court has applied this standard to military courts-martial, noting that "[i]n order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687; *Mazza*, 67 M.J. at 474).

The right to effective representation extends to post-trial proceedings. *United States v. Cornett*, 47 M.J. 128, 133 (C.A.A.F. 1997). Defense counsel is responsible for post-trial tactical decisions but should act "after consultation with the client where feasible." *United States v. MacCulloch*, 40 M.J. 236, 239 (C.M.A. 1994) (citation omitted). Defense counsel may not "submit matters over the client's objection." *United States v. Hood*, 47 M.J. 95, 97 (C.A.A.F. 1997).

We need not decide if defense counsel was deficient during post-trial representation if the second prong of *Strickland* regarding prejudice is not met. *United States v. Saintaude*, 61 M.J. 175, 183 (C.A.A.F. 2005). Our superior court has held that errors in post-trial representation can be tested for prejudice, which will be found if "the appellant 'makes some colorable showing of possible prejudice.'"

*United States v. Lee*, 52 M.J. 51, 53 (C.A.A.F. 1999) (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)).

The appellant has failed to make a colorable showing of prejudice in this case. We instead find the appellant's trial defense counsel provided proper post-trial representation. First, we find trial defense counsel properly advised the appellant about his options for deferment or waiver of forfeitures. The record shows that on 24 February 2012, the appellant signed a form entitled "Post Trial Rights Advisement." Among other items, this form set forth the appellant's rights with respect to deferment or waiver of forfeiture of pay. Below the appellant's signature is that of his trial defense counsel, who attested, "The preceding document was signed by [the appellant] after being fully counseled and advised by me of the previously noted rights." The record also shows the appellant answered in the affirmative when asked by the military judge if his counsel had explained those rights to him.

In his affidavit, trial defense counsel stated he reviewed the post-trial rights with the appellant prior to trial. He explained to the appellant in depth the process for deferment or waiver of forfeiture of pay, to include the appellant's family and financial situation. Trial defense counsel learned the appellant was married to another active duty member of the Air Force who was receiving full pay, allowances, and benefits. Based upon this information, trial defense counsel explained to the appellant that the convening authority probably would not defer forfeitures for his spouse because she was already receiving Air Force pay, he was not providing her with any financial support, they had no children, and there was no history of financial hardship. The appellant understood and told his counsel he could "see no justification for asking for the deferment." According to trial defense counsel, the appellant "voluntarily, knowingly, and intelligently waived his right to request deferment." We find nothing in the record to convince us otherwise.

Further, we find trial defense counsel effectively advised the appellant regarding clemency. In his affidavit, trial defense counsel states he explained the clemency process to the appellant prior to the end of the court-martial and again after the appellant was confined. The appellant did not ask his counsel to submit anything to or request anything specific from the convening authority. According to trial defense counsel, the appellant was inclined to waive clemency but opted to allow counsel to submit a clemency request asking the convening authority to reduce his sentence by a couple of months.

Trial defense counsel decided not to resubmit the sentencing package introduced at trial to the convening authority as part of the clemency request. Based on his experience, trial defense counsel concluded that merely resubmitting the sentencing materials in clemency would not have been helpful and could have actually undermined the clemency effort. He stated he took each case individually and would include materials from the sentencing package with the clemency request only if, in his opinion, they were "so substantial and significant that [they] warranted being resubmitted with

clemency." As described in his affidavit, trial defense counsel took this approach in the appellant's case:

> [I]n my opinion the only items that were relevant were four character letters. *It was a specific, reasoned, and strategic decision on my part not to re-submit any of these character letters, or any of the other matters in the sentencing package.* One character letter was from a [technical sergeant] who ran the bay orderly program that [the appellant] was working on [sic] while pending trial. The [technical sergeant] knew [the appellant] in that capacity only and only for 2 months. Two other character letters were from Airmen in [the appellant's] unit; an [airman] that knew [the appellant] for 4 months and an [airman first class] that knew my client for about 14 months. The final character letter was from a civilian employee that knew [the appellant] for about 4 months. *All of these character letters were very "thin" in nature. . . . They added little, if anything, relevant to clemency*, and again, these items had already been in front of the sentencing authority.

(emphasis added).

Trial defense counsel states he made a "specific, reasoned, and strategic decision" about what he chose to submit on the appellant's behalf for clemency, he advised his client on a course of action for clemency, and the appellant agreed with his advice. We find no reason to question his judgment on this matter.

*Sentence Severity*

The appellant next avers his sentence is inappropriately severe when compared with other closely related cases with less severe sentences. We disagree.

This Court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (citations omitted). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

Additionally, "[t]he Courts of Criminal Appeals are required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). Sentence comparison is not required unless this Court finds that any cited cases are "closely related" to the appellant's case and the sentences are "highly disparate." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999), *quoted in Sothen*, 54 M.J. at 296. Closely related cases include those which pertain to "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Lacy*, 50 M.J. at 288. The "appellant bears the burden of demonstrating that any cited cases are 'closely related' to his or her case and that the sentences are 'highly disparate.' If the appellant meets that burden . . . then the Government must show that there is a rational basis for the disparity." *Id.*

The appellant argues his sentence is too severe when compared to four other Air Force cases where the accused were convicted of similar charges. He asserts the accused in those cases received either (1) a lesser period of confinement for more egregious acts than he committed, or (2) the same or slightly longer period of confinement for crimes more serious and more numerous than his.[3]

We decline the appellant's invitation to engage in sentence comparison. We have reviewed the cases cited by the appellant and find them unpersuasive. The facts and the mix of charges and specifications in those cases vary significantly from the facts and charge in the appellant's case. The appellant has failed to show how these cases are in any way closely related to his case. They do not involve "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Lacy*, 50 M.J. at 288. The only common factor among the cases is that they involve crimes committed by other Air Force members under Article 120, UCMJ. Exercising our discretion, we find that sentence comparison in this case is unwarranted. *United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001) (holding courts of criminal appeals have the discretion to consider sentences in other courts-martial when reviewing a case for sentence appropriateness and relative uniformity).

We next consider whether the appellant's sentence was appropriate "judged by 'individualized consideration' of [the appellant] 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180–81 (C.M.A. 1959)). We have given individualized consideration to this particular appellant, the

---

[3] The appellant cites to the court-martial orders for *United States v. Payton*, ACM 37824; *United States v. Hohenstein*, ACM 37965; *United States v. Lara*, ACM 37861; and *United States v. Chambers*, ACM 38044.

nature and seriousness of the offenses, the appellant's record of service, and all other matters contained in the record of trial. The appellant forcibly raped an 18-year-old girl after ignoring her multiple pleas of "no" and "stop." The victim testified to the ongoing trauma she has suffered because of the rape. Thus, we find the approved sentence was clearly within the discretion of the convening authority, was appropriate in this case, and was not inappropriately severe.

*Appellate Review Time Standards*

We review de novo "[w]hether an appellant has been denied [his] due process right to a speedy post-trial review . . . and whether [any] constitutional error is harmless beyond a reasonable doubt." *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006) (citations omitted). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed before this Court. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The *Moreno* standards continue to apply as a case continues through the appellate process. *United States v. Mackie*, 72 M.J. 135–36 (C.A.A.F. 2013). The *Moreno* standard is not violated when each period of time used for the resolution of legal issues between this Court and our superior court is within the 18-month standard. *Id.* at 136; *United States v. Roach*, 69 M.J. 17, 22 (C.A.A.F. 2010).

This case was originally docketed for appellate review on 23 April 2012 and this Court rendered a decision on 14 August 2013, under the 18-month standard established in *Moreno*. As stated supra, our superior court recently decided that one of the judges who participated in that decision was not properly appointed. *See Janssen*, 73 M.J. at 222. Accordingly, we have considered the appellant's court-martial before a properly constituted panel and issue this decision. The time between our superior court's action and this decision has not exceeded 18 months; therefore, the *Moreno* presumption of unreasonable delay is not triggered. *See Mackie*, 72 M.J. at 136.

Additionally, Article 66(c), UCMJ, 10 U.S.C. § 866(c), empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Brown*, 62 M.J. 602, 606–07 (N.M. Ct. Crim. App. 2005), our Navy and Marine Court colleagues identified a "non-exhaustive" list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Among the non-prejudicial factors are the length and reasons for the delay; the length and complexity of the record; the offenses involved; and the evidence of bad faith or gross negligence in the post-trial process. *Id.* at 607. We find there was no bad faith or gross negligence in the post-trial processing. The reason for the delay between 14 August 2013 and our opinion today was to allow this Court and our superior court to fully consider a constitutional issue of first impression about whether the

Secretary of Defense has the authority under the Appointments Clause[4] to appoint civilian employees to the service courts of criminal appeals. We conclude that sentence relief under Article 66, UCMJ, is not warranted.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ. Accordingly, the approved findings and sentence are

AFFIRMED.

HARNEY, Senior Judge, participated prior to retirement.



FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[4] U.S. CONST. art II § 2, cl 2.