**UNITED STATES, Appellee,**

v.

**Robert C. CORNETT, Lance Corporal
U.S. Marine Corps, Appellant.**

No. 96–1062.
Crim.App. No. 94–1896.

U.S. Court of Appeals for
the Armed Forces.

Argued March 6, 1997.

Decided Sept. 15, 1997.

For Appellant: *Lieutenant James P. Benoit*, JAGC, USNR (argued); *Lieutenant James T. Mahoney*, JAGC, USNR.

For Appellee: *Major Stephen Finn*, USMC (argued); *Colonel Charles Wm. Dorman*, USMC, and *Commander D.H. Myers*, JAGC, USN (on brief).

*Opinion of the Court*

GIERKE, Judge:

A military judge sitting as a general court-martial at Cherry Point, N.C., convicted appellant, pursuant to his pleas, of conspiracy to possess heroin, unauthorized absence, making a false official statement, wrongful disposal of military property, wrongful damage to military property, wrongful possession of dilaudid, wrongful use of cocaine (2 specifications), wrongful use of dilaudid (2 specifications), and wrongful use of heroin, in violation of Articles 81, 86, 107, 108, and 112a, Uniform Code of Military Justice, 10 USC §§ 881, 886, 907, 908, and 912a, respectively. The military judge imposed a sentence of dishonorable discharge, confinement for 5 years, total forfeitures, and reduction to the lowest enlisted grade. In accordance with a pretrial agreement, the convening authority approved the sentence but suspended all confinement in excess of 36 months for 2 years. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

Our Court granted review of the following issues:

I

WHETHER THE MILITARY JUDGE ERRED IN REFUSING TO RECUSE HIMSELF WHERE HE TOLD TRIAL COUNSEL, DURING AN *EX PARTE* PRETRIAL CONVERSATION, THAT HE HAD ALREADY DECIDED THAT PROPOSED AGGRAVATION WITNESSES WERE UNNECESSARY DUE TO THE LARGE NUMBER OF DRUG CHARGES.

II

WHETHER APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHERE HIS APPOINTED DEFENSE COUNSEL UNILATERALLY RELEASED HIMSELF FROM REPRESENTING APPELLANT ON POST-TRIAL MATTERS, RESULTING IN LOSS OF ACCESS TO WITNESSES NECESSARY FOR CIVILIAN COUNSEL'S SUBMISSION OF RCM 1105 MATTERS.

We resolve both issues against appellant, for the reasons set out below.

*Challenge of Military Judge (Issue I)*

■ At the beginning of appellant's court-martial, the military judge disclosed that the day before trial, he had initiated an *ex parte* telephone conversation with trial counsel in order to ascertain "whether or not the case was prepared to go and whether the pleas were still as listed on the pretrial information sheet." The military judge disclosed that the trial counsel then asked him "whether [he] would take judicial notice of the symptoms of drug withdrawal." The military judge recounted the remainder of the conversation as follows:

[A]nd I said, "No, those are too subjective for me to consider as judicial notice. You'll have to bring your expert in." I said, "Are you presenting evidence in aggravation?" and Captain Bennett said, "Yes," that he had several witnesses; and he may have told me how many he had. I said, "Well, why would you need that evidence in aggravation, because I've never seen so many drug offenses? Why don't you consider holding that evidence in rebuttal and presenting it, if necessary, in rebuttal?" The trial counsel said he would consider that and talk it over with his boss, and that was the end of the conversation.

We did not discuss in any way what evidence he had on drug withdrawal or how in the world that evidence would be aggravating[.]

The military judge then described how an hour or 2 later he received another telephone call from trial counsel. Defense counsel was also on the telephone. Counsel expressed their concerns about the military judge's comment concerning the number of drug offenses on the charge sheet. The military judge noted defense counsel's concern that he had prejudged the sentence and assured him:

[T]hat was not what the conversation was about and that I had not prejudged in any way the sentence in this case, and that was the end of our conversation on the phone yesterday.

The military judge concluded his remarks by stating:

In hindsight, I can see that taken out of context, my remarks might be considered as referring to sentencing; but actually they were referring, as I explained, to the evidence of withdrawal.

Perhaps I used "shorthand" there that I shouldn't have; but what I meant, of course, was that there are several offenses on here of drug use and possession; and, if he's pleading guilty, as a judge, I have to go through all of those guilty pleas. I'm obviously going to find out whether—or I should find out whether or not there is any withdrawal or how that would affect—in fact, we didn't discuss this withdrawal evi-

dence at all; but it certainly seemed, at the time, to me that this is the kind of thing that would come out in the *Care* inquiry and, if it didn't, that [it] would probably come out in sentencing without the need for the government to present it in aggravation. However, as I said, in hindsight, I realize that the statement I made could also have been taken out of context to mean that because of the number of drug offenses on there, that I was talking about sentencing. Of course, I wasn't talking about sentencing at all and only about the evidence of drug withdrawal.

I don't know whether that would be aggravating evidence or—in fact, it could well be extenuating evidence.

The military judge then invited *voir dire* and challenges. Trial counsel declined, but defense counsel questioned the military judge. During *voir dire*, the military judge maintained that he had made no decision regarding aggravation witnesses by the Government and that it was trial counsel's decision as to what evidence he presented in aggravation. Regarding the ambiguity of his statements in the initial phone conversation, the military judge responded:

Considering the whole conversation I had with Captain Bennett that lasted—about this issue—perhaps 15 or 20 seconds—and I gave it [to] you almost verbatim—then no; I don't see how anybody could understand that it related to sentencing—the sentence to be given. No, I don't see how anybody could come to that conclusion. It was obviously raised by Captain Bennett when he raised the conversation about his judicial notice of withdrawal symptoms, and it obviously related to that issue only.

\* \* \*

I don't know that there was a difference of opinion. I don't see how Captain Bennett could have a difference of opinion regarding that since the conversation was raised by him in that regard. If he relayed my words out of context to others, I already said that, yes, just taking those words alone and without hearing the rest of the conversation, yes, I could understand how

people might think that it relates to the sentence to be given and not to the judicial-notice issue that Captain Bennett himself raised with me.

Defense counsel's challenge for cause of the military judge was denied. The military judge then advised appellant of his forum-selection rights. After conferring with counsel, appellant selected trial by military judge alone. The military judge advised appellant, after inquiring and affirming that there was a pretrial agreement with a provision requiring that appellant be tried by military judge alone, that electing military judge alone could not be a mandatory provision of the pretrial agreement and that it had to be entered into voluntarily. Appellant persisted in his request to be tried by military judge alone. The military judge advised appellant that in his opinion his request waived "any issue regarding challenge to the military judge," at which time the court-martial recessed for 50 minutes to allow appellant and his counsel to confer. When the court-martial was reconvened, appellant requested trial by military judge alone and stated he was satisfied with the military judge. The military judge assured appellant that he would be impartial.

Before entering pleas, defense counsel again asked the military judge to recuse himself. The military judge denied the recusal motion.

Appellant now argues that the military judge abused his discretion by not disqualifying himself when his conversation with trial counsel could reasonably be construed as indicating a predisposition adverse to appellant regarding an appropriate sentence. The Government argues that the military judge's refusal to disqualify himself was not an abuse of discretion in light of the innocuous nature of the comment and the military judge's full disclosure on the record.

■ RCM 902(a), Manual for Courts-Martial, United States (1995 ed.), provides that "a military judge shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned." RCM 902(b)(1) disqualifies a military judge "[w]here the military judge has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding." We review a military judge's ruling on recusal motions for abuse of discretion. *United States v. Elzy*, 25 MJ 416, 417 (CMA 1988).

■ In this case the military judge advised appellant that his request for trial by military judge without members might waive any disqualification based on the military judge's *ex parte* conversation with trial counsel. A request for a bench trial does not necessarily waive a challenge for cause. In *United States v. Sherrod*, 26 MJ 30, 32 n. 5 (1988), our Court adopted the reasoning and conclusion of the Army Court of Military Review that, under the circumstances of that case, a request for a bench trial was a legitimate tactical choice and did not constitute waiver of the military judge's disqualification. *See* 22 MJ 917, 922 (1986). Unlike *Sherrod*, we do not have a record before us reflecting defense counsel's rationale for preferring trial by military judge alone, notwithstanding the grounds for challenge. Furthermore, the tactical basis for a bench trial in appellant's case is difficult to discern, since the basis for the challenge was the military judge's predisposition to adjudge a harsh sentence.

We need not decide whether waiver should be applied in this case, however, because we decide the issue against appellant on its merits. In *United States v. Campos*, 42 MJ 253, 262 (1995), we held:

Where the military judge makes full disclosure on the record and affirmatively disclaims any impact on him, where the defense has full opportunity to *voir dire* the military judge and to present evidence on the question, and where such record demonstrates that appellant obviously was not prejudiced by the military judge's not recusing himself, the concerns of RCM 902(a) are fully met.

On the record before us, we hold, as we did in *Campos*, that the military judge did not abuse his discretion by refusing to recuse himself.

*Ineffective Assistance of Counsel (Issue II)*

■ After the trial, appellant hired Mr. David R. Dowell to represent him in post-

trial proceedings. Mr. Dowell telephonically notified Captain (Capt) Rupert, the detailed defense counsel, that he had been retained to prepare post-trial matters. Mr. Dowell asked Capt Rupert to arrange interviews with several members of appellant's unit. Capt Rupert had the impression that Mr. Dowell "was not interested in anything that [he] had to offer professionally," but only wanted Capt Rupert "to set up his appointments here at Cherry Point." Capt Rupert believed that appellant no longer desired to be represented by him.

Capt Rupert consulted with his Senior Defense Counsel, who "concurred" in Capt Rupert's impressions. Intending to preclude "any questions in the future," Capt Rupert sent appellant a facsimile (FAX) of a letter releasing him as defense counsel. The letter recited, "As a result of my hiring and retaining a civilian defense counsel for the purposes of preparing any and all material for submission under RCM 1105 & 1106, I hereby relieve you of any and all duties thereto pertaining." The letter is dated February 3, 1994.

Capt Rupert did not discuss the letter with appellant but talked to appellant's counselor at the brig. Capt Rupert told the counselor to give the FAX to appellant and have appellant "read and sign if he agreed with its contents." Capt Rupert received the signed release by FAX on the same day and the original signed copy by mail.

In a post-trial affidavit appellant said that he did not understand the release form, that he did not understand that he had a choice, and that he signed and returned it because his brig counselor advised him that "since the letter came from my attorney, I sign and return it to Capt Rupert."

On March 7, 1994, Capt Rupert sent a letter to "Mr. Jeff Dowell," apparently not realizing that Jeff Dowell was a non-lawyer member of Mr. David Dowell's firm. In the letter, Capt Rupert responded to Mr. David Dowell's request for assistance in arranging interviews by saying, "Unfortunately, due to [appellant's] relief of me, I am precluded from assisting you." Capt Rupert did, however, furnish Mr. Dowell with the name and

telephone number of his point of contact, the squadron legal officer. Capt Rupert told Mr. Dowell that he had given "the names you passed to me a few weeks ago" to his point of contact and that "she told me she would give you a call to set things up."

Mr. Dowell submitted a 10-page document to the convening authority, supported by two affidavits and eight letters. In addition to asking for clemency, Mr. Dowell raised several legal issues, including the adequacy of Capt Rupert's performance. Mr. Dowell criticized Capt Rupert for lack of preparation, failure to assert that appellant had been promised immunity, appearing at trial in an improper uniform, and improperly withdrawing from representing appellant after trial. Mr. Dowell asserted that, because of Capt Rupert's post-trial refusal to assist him, two unidentified witnesses became unavailable. From the context of the letter, it appears that the two witnesses pertained to Mr. Dowell's claim that appellant had been granted immunity by the squadron sergeant major.

In an affidavit attached to appellant's RCM 1106 submission, Mr. Jeff Dowell recites that on April 13, 1994, he spoke telephonically with Sergeant Major (SgtMaj) Medina, appellant's squadron sergeant major, and requested an opportunity to interview him, Gunnery Sergeant (GSgt) Whiting, GSgt Denton, Staff Sergeant Steel, GSgt Alan W. Wilson, and Sergeant Jeffery Wilson. According to Jeff Dowell's affidavit, SgtMaj Medina told him to call back in about 15 minutes. When Jeff Dowell called back, SgtMaj Medina told him that only he and GSgt Whiting, the squadron legal officer, "were around." Jeff Dowell and Richard Tripp, another paralegal, met with SgtMaj Medina and GSgt Whiting at about 2:30 p.m. on that same day. When they asked SgtMaj Medina and GSgt Whiting about a meeting at which SgtMaj Medina allegedly promised appellant immunity, both noncommissioned officers said that they did not desire to help appellant, and the meeting was terminated. Jeff Dowell's affidavit was supported by a second affidavit from Richard Tripp. Appellant's assertion that two witnesses "became unavailable" appears to be based on these two affidavits.

In assessing allegations of ineffective representation, this Court applies the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In order to overcome the presumption that counsel are competent, an appellant must demonstrate that counsel's performance was deficient and that he was prejudiced by the deficiency. *See United States v. Boone*, 42 MJ 308, 313 (1995); *United States v. Robertson*, 39 MJ 211, 218 (CMA 1994), citing *United States v. Scott*, 24 MJ 186 (CMA 1987). When an accused has both military and civilian counsel, we measure counsel's effectiveness "by the combined efforts of the defense team as a whole." *United States v. Boone, supra.*

The duties of defense counsel continue through the post-trial proceedings. *United States v. Robertson, supra*, citing *United States v. Palenius*, 2 MJ 86 (CMA 1977). Where an appellant was represented by counsel during post-trial proceedings, any error that occurs in connection with post-trial representation can be tested for prejudice. *United States v. Hickok*, 45 MJ 142, 145 (1996); *see United States v. Washington*, 45 MJ 497 (1997) (no prejudice from serving wrong counsel where accused was represented by military and civilian counsel).

Ordinarily, when an accused hires civilian counsel, the civilian counsel becomes lead counsel and detailed military counsel serves as assistant defense counsel. The lead defense counsel determines the duties to be performed by his or her assistants and the extent of participation of his assistants. Even an assistant who has no duties remains a member of the defense team unless excused by proper authority. *United States v. Tavolilla*, 17 USCMA 395, 400, 38 CMR 193, 198 (1968).

If a defense counsel seeks the consent of the client to withdraw as counsel, he or she should advise the client of the consequences of terminating the relationship. *See United States v. Carter*, 40 MJ 102, 105 (CMA 1994), citing *United States v. Gray*, 39 MJ 351 (CMA 1993).

Defense counsel's post-trial duties should be performed "after consultation with the client where feasible and appropriate." *United States v. Hood*, 47 MJ 95, 97 (1997), citing *United States v. MacCulloch*, 40 MJ 236, 239 (CMA 1994); *see United States v. Lewis*, 42 MJ 1, 4 (1995) ("Counsel's duty is to advise. . . ."). A defense counsel's failure to consult with the client may constitute deficient performance under certain circumstances. *See United States v. Hood, supra.*

The right to counsel means the right to "effective assistance of conflict-free counsel." *Carter*, 40 MJ at 105. Where an accused attacks the competence of trial defense counsel, a conflict of interest may arise because it raises a question whether trial defense counsel is "mentally free of competing interests." *United States v. Cornelious*, 41 MJ 397, 398 (1995).

We hold that Capt Rupert's post-trial representation of appellant was deficient in that he attempted to withdraw as defense counsel without authority and without proper consultation with his client concerning the repercussions of relieving him and without the approval of competent authority. Because the record had not yet been authenticated when Capt Rupert sought to be relieved, the military judge still had jurisdiction over the case and could have resolved the issue in a post-trial session under Article 39(a), UCMJ, 10 USC § 839(a). *See* RCM 1102.

We hold further that appellant has not shown that he was prejudiced by Capt Rupert's deficient performance, for the following reasons. First, although appellant asserts that lack of a military point of contact caused two favorable witnesses to become unavailable, all that he has shown is that two witnesses were "not around" on the day when two paralegals attempted to interview SgtMaj Medina and GSgt Whiting. He proffers no explanation for civilian counsel's lack of further attempts to interview the remaining witnesses, and no evidence that the two witnesses could not have been contacted through reasonable diligence.

Second, although Mr. Dowell complained about the lack of a military point of contact

in his RCM 1106 submission and in his brief before this Court, there is no evidence that appellant requested appointment of substitute counsel. We are skeptical about appellant's claim of prejudice based on lack of military counsel when appellant did not request appointment of substitute counsel. We are hard-pressed to find prejudice based on a situation that appellant could have remedied by timely request.

Finally, appellant does not explain how Capt Rupert could have continued to represent him in light of the conflict of interest created by Mr. Dowell's broad attack on Capt Rupert's competence. *See United States v. Cornelious, supra.*

Because appellant has not shown how the result would have been different but for Capt Rupert's unauthorized withdrawal from representation, we hold that appellant has not met the second prong of *Strickland* by showing prejudice. *See United States v. Bono,* 26 MJ 240, 242 (CMA 1988).

### Decision

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges SULLIVAN, CRAWFORD, and EFFRON concur.