# UNITED STATES NAVY–MARINE CORPS
# COURT OF CRIMINAL APPEALS

———————————————

### No. 201600173

———————————————

### UNITED STATES OF AMERICA
Appellee

v.

### BENJAMIN F. MITCHAM, JR.
Lance Corporal (E-3), U.S. Marine Corps
Appellant

———————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel David M. Jones, USMC.
For Appellant: Captain Daniel R. Douglass, USMC.
For Appellee: Lieutenant Commander Justin C. Henderson, JAGC,
USN; Lieutenant James M. Belforti, JAGC, USN.

———————————————

Decided 29 November 2016

———————————————

Before CAMPBELL, RUGH, and HUTCHISON, *Appellate Military Judges*

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————————

PER CURIAM:

A military judge sitting as a special court-martial convicted the appellant, pursuant to his plea, of assault consummated by battery, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928. The military judge sentenced the appellant to 60 days' confinement, reduction to pay grade E-1, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged.

Upon review, we specified one issue: did the appellant receive the effective assistance of counsel in his post-trial representation when detailed defense counsel requested relief that the CA had no authority to grant? After considering the pleadings, we find no error materially prejudicial to the appellant's substantial rights, and affirm the findings and sentence.

## I. BACKGROUND

The appellant was assigned to the Marine Corps Security Force Regiment onboard Naval Submarine Base (NSB) King's Bay, Georgia, where he worked alongside Lance Corporal (LCpl) JR. The appellant and LCpl JR were both married to other people and lived onboard NSB King's Bay less than a quarter-mile from each other. The couples became friends and routinely socialized with each other.

As part of their duties, the appellant and LCpl JR stood watch at the NSB King's Bay Waterfront Restricted Area (WRA), a secure area where the Marines on duty remained for approximately a week at a time, rotating through different security watches. During their duty rotation, Marines were typically not permitted to return home, but slept within the WRA. On 1 July 2015, the appellant's section, which included LCpl JR, had duty inside the WRA. However, the appellant's section leader authorized him to leave "the wire" to attend to his pregnant wife.[1]

After telling his wife he was going to go for a run, the appellant, instead, made his way to LCpl JR's apartment where LCpl JR's wife, SR, was home alone. The appellant repeatedly knocked on her door and texted her, asking if she was home, before SR opened the door. The appellant, without further invitation, walked past SR into her living room. Once inside SR's apartment, the appellant complained that his wife had not been "taking care of him," remarked how attractive SR was, and noted that if he and SR were married, he would have "been on her" the moment he entered the apartment.[2] The appellant proceeded to stare at SR's breasts and make inappropriate comments about her body. SR attempted to reassure the appellant about his own marriage and, hinting that he needed to leave, informed him that she had to get ready for work.

SR then excused herself, went to her bedroom to change, and the appellant followed her. Once in the bedroom, the appellant continued his comments about how attractive SR was and described the various sex acts he would like to do with her. At some point while in the bedroom, the appellant

---

[1] Record at 69-70. Marine Security Force Regiment personnel referred to their duty rotation within the WRA as a "week in the wire."

[2] Prosecution Exhibit 1 at 3.

hugged SR, without her consent, by placing his arms around her torso. Feeling uncomfortable with the appellant's unwanted advances, SR told the appellant he needed to leave, went into the adjacent bathroom, locked the door and changed for work. When she emerged from the bathroom five minutes later, SR made her way back into the living room to grab her keys, where appellant approached and cornered her. After telling her "you've got it all," the appellant reached down and ran both of his hands along SR's thighs and then touched SR's breasts over her clothing.[3] At that point, the appellant's wife called, interrupting the appellant's advances, and he left SR's apartment telling her she should call or text him later.

Following the appellant's guilty plea, the CA's staff judge advocate (SJA) correctly advised the CA that the CA could not "disapprove, commute or suspend" the adjudged punitive discharge.[4] In response, trial defense counsel submitted clemency matters pursuant to RULE FOR COURTS-MARTIAL 1105, MANUAL FOR COURTS MARTIAL, UNITED STATES (2012 ed.), asking that the CA "set aside the conviction in lieu of nonjudicial punishment" and "set aside the [b]ad-[c]onduct [d]ischarge in lieu of an administrative discharge."[5] Notably, trial defense counsel conceded that "reduction in rank . . . may be merited in this case."[6] In his action, the CA noted the discrepancy between the SJA's advice and trial defense counsel's request, remarking that, after careful consideration, "even if I had the authority to disapprove or suspend the [b]ad-[c]onduct [d]ischarge, I would not exercise it in this case."[7]

## II. DISCUSSION

Under recent changes to Article 60, UCMJ, except for only the most minor offenses, a CA can no longer set aside guilty findings.[8] In acting on sentences, CAs can no longer "disapprove, commute, or suspend in whole or in part an adjudged sentence of confinement for more than six months or a sentence of dismissal, dishonorable discharge, or bad conduct discharge" unless certain exceptions exist.[9] As a result of these changes, the CA could not grant trial defense counsel's requested relief. *United States v. Kruse*, __ M.J. __, No.

---

[3] *Id*. at 4.

[4] SJAR dated 8 Apr 2016 at 2.

[5] Trial Defense Counsel ltr 5813 Ser DSO/fal of 30 Apr 16 at 1.

[6] *Id*. at 3.

[7] Convening Authority Action at 3.

[8] National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113-66, 127 Stat. 672, 956 (2013).

[9] *See Id*. at 956-57. Neither of the exceptional circumstances are present in this case.

201600101, 2016 CCA LEXIS 650, at *8-10 (N-M. Ct. Crim. App. 3 Nov 2016) (holding such an action by the CA to be *ultra vires*).

"By virtue of Article 27, UCMJ, 10 U.S.C. §827, as well as the Sixth Amendment of the Constitution, a military accused is guaranteed the effective assistance of counsel." *United States v. Scott*, 24 M.J. 186, 187-88 (C.M.A. 1987) (citations omitted). That right extends to post-trial proceedings. *United States v. Cornett*, 47 M.J. 128, 133 (C.A.A.F. 1997). In reviewing claims of ineffective assistance of counsel, we "look at the questions of deficient performance and prejudice *de novo.*" *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012). However, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). Thus, the appellant bears the burden of demonstrating (1) that his counsel's performance was deficient to the point that he "was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment" and (2) that the deficient performance prejudiced the defense. *Id.* (citations and internal quotation marks omitted).

Courts are not required, however, to determine whether counsel's performance was deficient before first examining whether the appellant suffered any prejudice. *Datavs*, 71 M.J. at 424-25. In evaluating claims of post-trial ineffective assistance of counsel, courts must give an appellant the benefit of the doubt and find that "there is material prejudice to the substantial rights of an appellant if there is an error and the appellant 'makes some colorable showing of possible prejudice.'" *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998) (quoting *United States v. Chatman*, 46 M.J. 321, 323-24 (C.A.A.F. 1997)). In this case, we conclude that the appellant has not made a colorable showing of possible prejudice. The appellant has not articulated any specific prejudice that resulted from the request for unauthorized relief, and has submitted no evidence indicating how his trial defense counsel's clemency submission contrasted with his wishes.[10] Likewise, the appellant fails to adequately describe what the CA "might have done to structure an alternative form of clemency." *United States v. Capers*, 62 M.J. 268, 270 (C.A.A.F. 2005). Indeed, at the time of the CA's

---

[10] *See e.g., United States v. Starling*, 58 M.J. 620, 622-23 (N-M. Ct. Crim. App. 2003) (finding that "bare allegations" of "inadequate representation" are not "seriously entertained" by courts without submission of an affidavit showing how counsel acted contrary to appellant's wishes); *United States v. Pierce*, 40 M.J. 149, 151 (C.M.A. 1994) (finding that vague or general intimations with regards to what the appellant would have submitted to the convening authority is insufficient to show prejudice).

action, the appellant had already served the adjudged 60 days' confinement. The only additional punishments the CA might have acted upon were the appellant's reduction in rank—which trial defense counsel conceded was an appropriate punishment—and retroactive deferment of the automatic forfeiture of two-thirds pay per month pursuant to Article 58b, UCMJ, during the previously served confinement period. But the appellant has provided no evidence to suggest that he desired any relief from either the reduction in rank or the automatic forfeitures, or, alternatively, that he was improperly advised regarding any potential clemency.

### III. CONCLUSION

The findings and sentence as approved by the CA are affirmed.

For the Court

R.H. TROIDL
Clerk of Court