# UNITED STATES NAVY–MARINE CORPS
# COURT OF CRIMINAL APPEALS

_____

### No. 201600116

_____

### UNITED STATES OF AMERICA
Appellee

v.

### JOSHUA J. GARCIA
Lance Corporal (E-3), U.S. Marine Corps
Appellant

_____

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel Leon J. Francis, USMC.
For Appellant: Major Jason L. Morris, USMCR.
For Appellee: Lieutenant Commander Justin C. Henderson, JAGC,
U.S. Navy; Lieutenant James M. Belforti, JAGC, USN.

_____

Decided 15 December 2016

_____

Before CAMPBELL, RUGH, and HUTCHISON, *Appellate Military Judges*

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

_____

HUTCHISON, Judge:

A military judge sitting as a special court-martial convicted the appellant, consistent with his pleas, of one specification of failing to obey a lawful general order,[1] one specification of abusive sexual contact, and one specification of assault consummated by battery in violation of Articles 92, 120, and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 920, and 928. The military judge sentenced the appellant to 12 months'

---

[1] Marine Corps Order 1700.22F at ¶ 4.a.(1)(g)1 (3 Dec 2009), by wrongfully consuming alcohol while under the age of 21.

confinement, reduction to pay grade E-1, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged.

Upon review, we specified one issue: whether the appellant received the effective assistance of counsel in his post-trial representation when detailed defense counsel requested relief outside the authority of the CA to grant. After considering the pleadings and an affidavit from trial defense counsel, we affirm the findings and sentence.

## I. BACKGROUND

The appellant, Lance Corporal (LCpl) JS, and two other Marines spent the evening of 13 March 2015 and early morning hours of 14 March 2015 at a club in Pearl Harbor. Both before and during his time at the club, the appellant—only 20 years old at the time—consumed beer and hard liquor. While at the club, the appellant repeatedly made sexual advances towards LCpl JS. LCpl JS responded several times that "she was not interested in [him] sexually."[2] Eventually, LCpl JS asked the other two Marines to intervene in order to prevent the appellant from continuing to bother her.

Upon returning to the barracks onboard Marine Corps Base Hawaii, and despite his earlier failed attempts to court LCpl JS, the appellant made his way to LCpl JS's room, knocked on the door and then barged his way in when she answered. Once inside LCpl JS's room, and despite her repeated protestations for him to stop and to leave, the appellant kissed LCpl JS on the neck and fondled her inner thigh, groin and genitalia.[3]

The appellant pleaded guilty pursuant to a pretrial agreement, which provided, in part, that both a punitive discharge and any confinement "[m]ay be approved as adjudged."[4] Trial defense counsel submitted a post-trial clemency request pursuant to RULES FOR COURTS-MARTIAL 1105 and 1106, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), asking that the CA suspend "confinement in excess of 9 months" and "that the [b]ad[-c]onduct [d]ischarge be disapproved."[5]

## II. DISCUSSION

The National Defense Authorization Act for Fiscal Year 2014[6] amended Article 60(c)(4), UCMJ, and restricted the CA's authority to modify sentences

---

[2] Record at 22.

[3] *Id.*

[4] Appellate Exhibit 3 at 1.

[5] Clemency Request of 18 Feb 16 at 1.

[6] Pub. L. No. 113-66, 127 Stat. 672 (2013).

for all but the most minor offenses committed on or after 24 June 2014. Specifically, the changes to Article 60(c)(4), UCMJ, prohibit CAs from "disapprov[ing], commut[ing], or suspend[ing] in whole or in part an adjudged sentence of confinement for more than six months or a sentence of dismissal, dishonorable discharge, or bad conduct discharge" unless certain exceptions (which are not relevant to this case) exist.[7] As a result, in this case the CA's discretion to modify the appellant's adjudged sentence was limited to action on the reduction in pay grade.[8] The CA could also defer the automatic forfeiture of pay imposed pursuant to Article 58b, UCMJ. The CA could not, however, suspend confinement or disapprove the bad-conduct discharge as requested. *United States v. Kruse,* __ M.J. __, No. 201600101, 2016 CCA LEXIS 650, at *8-10 (N-M. Ct. Crim. App. 3 Nov 2016) (holding such an action by the CA to be *ultra vires*).

The right to effective assistance of counsel at courts-martial is guaranteed by the Sixth Amendment and by Article 27, UCMJ, 10 U.S.C. § 827. *United States v. Hicks,* 47 M.J. 90, 92 (C.A.A.F. 1997). That right extends to post-trial proceedings. *United States v. Cornett,* 47 M.J. 128, 133 (C.A.A.F. 1997). Indeed, "[o]ne of counsel's fundamental duties after trial is to consider and submit, if appropriate, a petition for clemency to the convening authority on his client's behalf." *United States v. Cobe,* 41 M.J. 654, 655 (N-M. Ct. Crim. App. 1994) (citations omitted).

In reviewing claims of ineffective assistance of counsel, we "look at the questions of deficient performance and prejudice *de novo.*" *United States v. Datavs,* 71 M.J. 420, 424 (C.A.A.F. 2012) (citation and internal quotation marks omitted). However, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland v. Washington,* 466 U.S. 668, 689 (1984). Thus, the appellant bears the burden of demonstrating (1) that his counsel's performance was deficient to the point of "not functioning as the counsel guaranteed . . . by the Sixth Amendment" and (2) that the deficient performance prejudiced the defense. *United States v. Tippit,* 65 M.J. 69, 76 (C.A.A.F. 2007) (citations and internal quotation marks omitted). "The burden on each prong rests with the appellant challenging his counsel's performance." *United States v. Davis,* 60 M.J. 469, 473 (C.A.A.F. 2005).

Our review of counsel's performance is highly deferential and is buttressed by a strong presumption that counsel provided adequate representation. *United States v. Garcia,* 59 M.J. 447, 450 (C.A.A.F. 2004).

---

[7] *Id.* at 956-57.

[8] The CA was also prohibited from disapproving the findings. *See* Art. 60(c)(3), UCMJ.

Moreover, "[w]e do not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine whether counsel made an objectively reasonable choice in strategy from the available alternatives." *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (citations and internal quotation marks omitted). "[S]trategic choices made by trial defense counsel are 'virtually unchallengeable' after thorough investigation of the law and the facts relevant to the plausible options." *Id.* at 371 (quoting *Strickland*, 466 U.S. at 690-91).

Consequently, "bare allegations" of "inadequate representation for failure to exercise . . . post-trial rights" are not "seriously entertained" by this court, "without the submission of an affidavit by the appellant stating how counsel's inaction contrasted with his wishes." *United States v. Starling*, 58 M.J. 620, 622-23 (N-M. Ct. Crim. App. 2003). Where trial defense counsel, by contrast, submits an affidavit, and "[t]he factual assertions in the affidavit provide a 'reasonable explanation for counsel's actions,'" this heavily "weighs against the appellant overcoming the presumption of competence" of counsel. *United States v. Wilkerson*, No. 201200438, 2013 CCA LEXIS 367, at *7, unpublished op. (N-M. Ct. Crim. App. 30 April 2013) (per curiam) (quoting *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)).

Here, the appellant asserts that trial defense counsel's performance was "constitutionally deficient" for "fail[ing] to request sentence relief the CA had the power to grant."[9] However, the appellant did not submit an affidavit stating how trial defense counsel's submission violated his wishes, if at all. By contrast, trial defense counsel's affidavit provided context to the clemency request and explained the "*tactical decision* to focus [the] request for clemency on allowing for meaningful relief should the new Article 60 ever be successfully challenged."[10] Trial defense counsel noted that after much discussion within the world-wide defense community, there was consensus that Article 60, UCMJ, might be susceptible to appellate challenges. As a result, defense counsel were reportedly encouraged to seek clemency even when it was not authorized in order to "preserve the issue for appeal and signal [the defense bar's] opposition to the modifications to Article 60," UCMJ.[11] More importantly, trial defense counsel asserts–without contradiction from the appellant–that he fully discussed this strategy with

---

[9] Appellant's Brief of 23 Sep 2016 at 4.

[10] Appellee's Motion to Attach of 2 Nov 2016, Trial Defense Counsel's Affidavit at ¶ 6 (emphasis added).

[11] *Id.* at ¶ 7.

the appellant and received the appellant's approval prior to submitting the clemency request to the CA.[12]

 "[W]e cannot say [trial defense counsel's] path here was objectively unreasonable, particularly when there is no indication that it was inconsistent with the appellant's wishes." *United States v. Ouillette*, No. 201600075, 2016 CCA LEXIS 481, at *9 unpublished op. (N-M. Ct. Crim. App. 16 Aug 2016). Therefore, we conclude that the appellant has failed to demonstrate that his counsel's performance was deficient, and we need not reach the issue of whether appellant's rights were prejudiced.

### III. CONCLUSION

The findings and the sentence as approved by the CA are affirmed. The supplemental promulgating order will reflect that the appellant was arraigned and tried on 30 November 2015, vice 11 December 2015. *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998).

Senior Judge CAMPBELL and Judge RUGH concur.


For the Court


R.H. TROIDL
Clerk of Court

---

[12] *Id.* at ¶ 10. Trial defense counsel explained that the appellant expressed no interest in avoiding automatic forfeitures or restoring his rank, but was, instead, focused on avoiding the punitive discharge.