# United States Navy-Marine Corps Court of Criminal Appeals

_____

**UNITED STATES**
Appellee

**v.**

**Mansoo M. MASGA**
Gunnery Sergeant (E-7), U.S. Marine Corps
Appellant

**No. 201700276**

Appeal from the United States Navy-Marine Corps Trial Judiciary

Decided: 13 February 2019

Military Judge:
Lieutenant Colonel Eugene H. Robinson, USMC.

Sentence adjudged 12 May 2017 by a general court-martial consisting of officer and enlisted members convened at Camp Foster, Okinawa, Japan. Sentence approved by the convening authority: reduction to E-1, total forfeiture of pay and allowances, confinement for 2 years, and a dishonorable discharge.

For Appellant:
*Brian A. Pristera, Esq.;*
*Lieutenant Commander Jeremy J. Wall, JAGC, USN*

For Appellee:
*Lieutenant Allyson L. Breech, JAGC, USN;*
*Captain Sean M. Monks, USMC;*
*Lieutenant Jonathan Todd, JAGC, USN;*
*Lieutenant Kurt W. Siegal, JAGC, USN*

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 30.2**

_____

Before HUTCHISON, TANG, and LAWRENCE,
*Appellate Military Judges.*

HUTCHISON, Senior Judge:

A general court-martial convicted the appellant, contrary to his pleas, of wrongfully possessing and viewing child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2012). The Convening Authority (CA) approved the adjudged sentence of two years' confinement, reduction to paygrade E-1, forfeiture of all pay and allowances, and a dishonorable discharge. Except for the punitive discharge, the CA ordered the sentence executed.

The appellant initially raised three assignments of error (AOEs). First, the appellant contends that the military judge abused his discretion by permitting the trial counsel to improperly argue. Second, the appellant avers that he received ineffective assistance of counsel during the post-trial phase because his detailed defense counsel did not contact him to finalize his clemency submission and failed to submit matters he wanted submitted to the CA. Third, the appellant argues the CA failed to consider and decide his request to waive automatic forfeitures.

Following our review of the record and the pleadings, we identified an additional issue that impacted the appellant's second and third AOEs. Specifically, we noted that the appellant's end of active obligated service (EAOS) occurred prior to trial, and that, as a result, he was not entitled to pay upon entering post-trial confinement.[1] In light of the appellant's non-pay status, we asked the parties: (1) given the nature of the appellant's punishment and the limited authority of the CA to grant clemency pursuant to Article 60, UCMJ, what prejudice did the appellant suffer from any post-trial deficient perfor-

---

[1] The appellant's EAOS was 10 April 2017 and he was sentenced on 12 May 2017. *See United States v. Fischer*, 61 M.J. 415, 419 (C.A.A.F. 2005) ("[E]very servicemember's entitlement to pay is terminated at EA[O]S."); *see also Simoy v. United States*, 64 F. App'x 745, 747 (Fed. Cir. 2003) ("[A] service member's entitlement to pay ceases when his enlistment expires."); *Matter of: Courts-martial Sentences-Records Lost Before Appellate Review-Appellate Leave Benefits*, 1996 U.S. Comp. Gen. LEXIS 442, at *4-5 (Sept. 12, 1996) ("It is a well settled rule that no credit for pay and allowances accrues to a court-martialed enlisted member during periods after the expiration of his term of enlistment."); Dep't Def. Fin. Mgmt. Reg. Vol. 7A, para. 010402.g.3, (Apr. 2017) ("An enlisted member retained in the Military Service for the purpose of trial by court-martial is not entitled to pay for any period after the expiration of the enlistment unless acquitted or the charges are dismissed, or the member is retained in or restored to a full-duty status.").

mance on the part of his trial defense counsel?; and (2) whether his third AOE—alleging the CA failed to consider waiving automatic forfeitures—was moot.[2] In response to our specified issues, the appellant concedes that he was not entitled to pay and that his third AOE is therefore rendered moot.

Having carefully considered the appellant's remaining assigned errors, the record of trial, and the parties' submissions, we find no prejudicial error and affirm.

## I. BACKGROUND

While conducting an undercover operation in Okinawa, Japan, Naval Criminal Investigative Service (NCIS) agents identified a known child pornography video downloaded from a peer-to-peer file sharing network to an internet protocol (IP) address registered to the appellant. During an NCIS interrogation following his apprehension, the appellant admitted to using the peer-to-peer program to search for and download adult pornography. The appellant explained that during his sweeping searches for adult pornography using the peer-to-peer program, he would download numerous files responsive to the search terms he entered. Sometimes those files, unbeknownst to him, contained child pornography, and he would, therefore, unwittingly, "accidentally," download child pornography.[3] According to the appellant, he would then immediately delete any file containing child pornography.

The appellant consented to a search of his computers, hard drives, and other electronic media. A subsequent forensic examination conducted by the Defense Computer Forensics Lab (DCFL) of the appellant's digital media revealed the presence of numerous images and videos depicting child pornography. In addition to the DCFL report and the images and videos found, the government introduced two additional documents pursuant to MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 404(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.). The first document, Prosecution Exhibit (PE) 14, is a list of 390 search terms related to child pornography that were entered into the search bar of the peer-to-peer application found on the appellant's computer. The second document, PE 15, is a spreadsheet showing the dates and times various files with names indicative of child pornography were downloaded using the peer-to-peer program on the appellant's computer. The government's computer forensic expert testified that the list constituted

---

[2] *See* N-M. Ct. Crim. App. Order of 11 Dec 2018.

[3] Prosecution Exhibit (PE) 10; Appellate Exhibit (AE) XLV at 48. AE XLV is a transcript of the appellant's NCIS interrogation, PE 10.

"trace evidence" that each file listed in PE 15 had been downloaded to the appellant's computer via the peer-to-peer program, but she qualified her testimony to indicate that she was not testifying that each file listed in PE 15 was actually on the appellant's computer.[4] The expert explained that although it was possible to search the appellant's computer to verify the presence of all of the downloaded file names indicated in the download list, it was not feasible to do so because it was such a laborious process.[5] She did, however, manually confirm that four of the videos and images entered into evidence at trial matched file names contained in PE 15. She further explained it was "too much data to report on all the files on the system" and she had already identified and extensively analyzed 16 images and videos of suspected child pornography found in allocated (undeleted) space.[6] The military judge admitted the two documents as evidence of the appellant's intent to download child pornography and to rebut his assertion that any download of child pornography was the result of accident or mistake.

Prior to closing arguments, the military judge instructed the members how they could use the two documents:

> Prosecution Exhibit 14 is a list of Internet search terms. Prosecution Exhibit 15 is a list of downloaded files. You may consider evidence that the accused may have searched for child pornography on the Internet using those search terms and downloaded files with those titles for the limited purpose of their tendency, if any, to prove intent to view and possess child pornography, knowledge of the child pornography he allegedly viewed and possessed, and to rebut the contention of the accused that his viewing and possession of child pornography was the result of accident or mistake. You may not consider this evidence for any other purpose, and you may not conclude from this evidence that the accused is a bad person or has general criminal tendencies and that he, therefore, committed the offenses charged.[7]

---

[4] Record at 663-64.

[5] The trial counsel explained this process required "search[ing] for every single file of every single download on the computer." Excluding duplicates, there were over 200 downloaded file names in PE 15 that were indicative of child pornography. *Id.* at 585.

[6] *Id.* at 666.

[7] *Id.* at 858-59.

During his closing argument the trial counsel referenced the search terms found on the appellant's computer, referring to them as "390 items of specific intent."[8] Referencing a specific search term used, the trial counsel reminded the members of a graphic video found on the appellant's computer and argued that "[y]ou put in a search term like this, you might get something like [the graphic video]."[9] The trial counsel explained:

> Is there any lawful, logical, or innocent person—a reason for searching for something like this? . . . [H]ow many terms does the government have to provide to show you that that was his intent to download that garbage? 390 is overwhelming. It's overwhelming. What were the results? He got exactly what he ordered. When you look at just the search terms and the [child pornography] on the DVD, he got exactly what he was searching for.[10]

The civilian defense counsel objected, claiming the trial counsel's argument was contrary to the military judge's instructions. The military judge overruled the objection. The trial counsel continued with his argument, again referring to the search terms and the names of files downloaded to the appellant's computer. The trial counsel conceded that the files listed on the spreadsheet as having been downloaded to the appellant's computer were not necessarily the files found on the appellant's computer during the forensic search, but argued that the graphic file names along with the search terms was evidence of the appellant's intent. The appellant's civilian defense counsel objected again, and the military judge noted the objection.

Additional facts necessary to resolve the issues are included below.

## II. DISCUSSION

### A. Improper Argument

The appellant contends that the military judge erred when he permitted the trial counsel to "criminalize [the appellant's] alleged use of the search term[s]" and to argue that a "lawful, logical, or innocent person" would have not used those search terms.[11] The appellant contends that such an argument was in direct violation of the military judge's limiting instruction on the use

---

[8] *Id.* at 875.

[9] *Id.*

[10] *Id.*

[11] Appellant's Brief of 19 Mar 2018 at 15.

of that evidence, and was instead an impermissible argument that the appellant had a propensity for crime.

When preserved by objection, we review allegations of improper argument *de novo* to determine whether the military judge's ruling constitutes an abuse of discretion. *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citing *United States v. Hornback*, 73 M.J. 155, 159 (C.A.A.F. 2014). Improper argument is one facet of prosecutorial misconduct. *See United States v. Young*, 470 U.S. 1, 7-11 (1985). Prosecutorial misconduct occurs when the trial counsel "oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense." *United States v. Fletcher*, 62 M.J. 175, 178 (C.A.A.F. 2005) (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)) (internal quotation marks omitted). Such conduct "can be generally defined as action or inaction by a trial counsel in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *Id.* at 160 (citations and internal quotation marks omitted). The trial counsel may appropriately "argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000). But, he may not inject his personal opinion into the members' deliberations, inflame their passions or prejudices, or ask them to convict on the basis of criminal predisposition. *See Sewell,* 76 M.J. at 18; *United States v. Burton*, 67 M.J. 150, 153 (C.A.A.F. 2009); *Fletcher*, 62 M.J. at 180; *Baer*, 53 M.J. at 238.

We conclude the trial counsel's arguments were not improper and the military judge did not, therefore, abuse his discretion in overruling the civilian defense counsel's objections. The military judge specifically instructed the members that they were to consider the search terms and downloaded file names in PE 14 and 15 for the limited purpose "to prove intent to view and possess child pornography" and to "rebut the contention of the [appellant] that his viewing and possession . . . was the result of accident or mistake."[12] The trial counsel's arguments conformed to this instruction. Each time the trial counsel described a search term or the name of a file downloaded on the appellant's computer, he linked it to the appellant's intent to download child pornography. While the trial counsel did state, "Is there any lawful, logical, or innocent person—a reason for searching for something like this?" we do not read this sentence as an inappropriate propensity argument. Rather, we believe a reasonable member would believe the trial counsel briefly misspoke and immediately corrected the sentence to refer to an "innocent *reason*" why a person would use such search terms. This reading makes more sense in the

---

[12] Record at 858.

context of the question. The disjointed sentence does not make any assertions as to what an "innocent person" would or would not do and does not argue that the appellant is not "innocent" merely because the search terms were found on his computer. And although the words were used consecutively, we do not find this to be an improper euphemism for predisposition or propensity. Rather, the trial counsel's argument focused on the intent of the appellant; that the search terms were circumstantial evidence that the appellant sought out and purposefully downloaded the child pornography actually found on his computer, rather than *innocently* or accidentally downloading it along with adult pornography, as he claimed.

Regardless, even were we to find the trial counsel's argument improper, "reversal is warranted only when the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone." *Sewell*, 76 M.J. at 18 (citation and internal quotation marks omitted). In *Fletcher*, the Court of Appeals for the Armed Forces set out three factors to guide our determination of the prejudicial effect of improper argument: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction[s]." 62 M.J. at 184. Indeed, the "third factor [alone] may so clearly favor the government that the appellant cannot demonstrate prejudice." *United States v. Andrews*, 77 M.J. 393, 402 (C.A.A.F. 2018) (alteration in original) (citation and internal quotation marks omitted).

Here, the case against the appellant was overwhelming. NCIS agents identified suspected child pornography being downloaded via a peer-to-peer network to a computer using an IP address registered to the appellant. The appellant had sole access to the computer and admitted to using the peer-to-peer software to download pornography. He admitted viewing child pornography, although he claimed it was an accident and he immediately deleted the few offensive files. A forensic examination of the appellant's computer and portable hard drive revealed multiple undeleted videos of child pornography and identified the graphic search terms used in the peer-to-peer program—terms that were highly probative of the appellant's intent, knowledge, and lack of mistake.[13] Consequently, we conclude that even if the trial counsel's argument was improper, the appellant cannot demonstrate prejudice.

---

[13] Notably, the appellant does not contend that the military judge erred in admitting the search terms or the spreadsheet of downloaded files as evidence of intent or lack of mistake, pursuant to MIL. R. EVID. 404(b). Rather, the appellant argues only that the trial counsel's argument was improper. Thus, the members would still have considered evidence of the search terms and the spreadsheet containing the list of files downloaded.

**B. Ineffective Assistance of Counsel**

The appellant next argues that his detailed defense counsel was ineffective in her post-trial representation.[14] In a post-trial affidavit, the appellant asserts that he was never contacted to finalize his clemency submission, that he spoke with trial defense counsel only four times after sentencing and relayed to her his desire to write a letter to the CA, and that she eventually submitted clemency matters without his knowledge.[15] As a result, his proposed, but undrafted, letter to the CA and a certificate of completion for a relapse prevention course—completed while confined—were not presented to the CA.

We review claims of ineffective assistance of counsel *de novo. United States v. Harpole*, 77 M.J. 231, 236 (C.A.A.F. 2018). The Sixth Amendment entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The right to effective assistance of counsel extends to post-trial proceedings. *United States v. Cornett*, 47 M.J. 128, 133 (C.A.A.F. 1997).

In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice. *Strickland*, 466 U.S. at 687. "The burden on each prong rests with the appellant challenging his counsel's performance." *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005). The first prong requires the appellant to show that counsel's performance fell below an objective standard of reasonableness, indicating that counsel was not functioning as counsel within the meaning of the Sixth Amendment. *United States v. Terlep*, 57 M.J. 344, 349 (C.A.A.F. 2002). Our review of counsel's performance is highly deferential and is buttressed by a strong presumption that counsel provided adequate representation. *United States v. Garcia*, 59 M.J. 447, 450 (C.A.A.F. 2004).

The second prong requires a showing of prejudice resulting from counsel's deficient performance. *Strickland*, 466 U.S. at 687. When evaluating claims of ineffective assistance of counsel related to post-trial representation, courts must give an appellant the benefit of the doubt and find that "there is material prejudice to the substantial rights of an appellant if there is an error and

---

[14] The appellant's allegation of ineffective assistance is aimed solely at his detailed defense counsel and not his civilian defense counsel, as the civilian defense counsel was not retained for post-trial matters.

[15] *See* Appellant's Motion to Attach of 15 Mar 2018 at Exhibit G (Affidavit of Appellant of 13 Mar 2018).

the appellant 'makes some colorable showing of possible prejudice.'" *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998) (quoting *United States v. Chatman*, 46 M.J. 321, 324 (C.A.A.F. 1997)). In resolving claims of ineffectiveness, we "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [appellant]." *Strickland*, 466 U.S. at 697. "Rather, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed.'" *United States v. Datavs*, 71 M.J. 420, 424-25 (alteration in original) (quoting *Strickland*, 466 U.S. at 697).

Regarding *Strickland's* first prong, the detailed defense counsel submitted an affidavit pursuant to an order from this court, generally denying the appellant's allegations and specifically denying that the appellant ever told her he intended to write a letter to the CA. We received the detailed defense counsel's affidavit prior to ordering the parties to brief the specified issues. As a result, the detailed defense counsel's affidavit did not address the expiration of the appellant's EAOS. We are, however, mindful that the detailed defense counsel asked the CA for "clemency on the forfeitures" seemingly unaware that her client was no longer entitled to pay, and that the CA was powerless to grant her request.[16] While this level of advocacy seems to fall below professional norms, we need not decide whether the counsel's performance was deficient, because, in this case, we conclude the appellant has not made a colorable showing of possible prejudice resulting from either the detailed defense counsel's alleged failure to consult with him before submitting clemency matters, or her flawed clemency request.

Given the appellant's adjudged sentence, the restrictions imposed by Article 60(c)(4), UCMJ, on the CA's clemency powers, and the fact that the appellant was sentenced after the end of his term of enlistment and was therefore not entitled to pay and allowances,[17] the CA's ability to grant clemency in this case was extremely limited. Although "[t]he colorable showing threshold is low, . . . the prejudice must bear a reasonable relationship to the error, *and it must involve a reasonably available remedy*." *United States v. Capers*, 62 M.J. 268, 270 (C.A.A.F. 2005) (emphasis added) *(*citation omitted). Here, the appellant has not provided an "adequate description" of what "alternative

---

[16] Clemency ltr of 20 Aug 17 at 1. The CA was also apparently unaware of the appellant's status. Neither the CA's Action, the Staff Judge Advocate's Recommendation, its addendum, nor the CA's letter denying the appellant's request to defer imposition of forfeitures ever mentions the fact that the appellant was not entitled to pay, and that, therefore, the CA was powerless to waive or defer forfeiture of pay.

[17] *See also* Appellant's Response to Specified Issue of 28 Dec 2018 at 2 ("Once GySgt Masga was convicted he was no longer eligible for pay and allowances.").

form of clemency" he might have sought. *Id.* Indeed, the only clemency available to the appellant would have been action on his reduction in rank. But, the appellant has provided no evidence to suggest that he desired any relief from the reduction in rank. And, in the appellant's case, as a prisoner not entitled to pay and allowances and pending a punitive discharge, we find any such relief illusory.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and sentence are correct in law and fact and that no error materially prejudicial to the appellant's substantial rights occurred. Arts. 59 and 66, UCMJ. Accordingly, the findings and sentence as approved by the convening authority are **AFFIRMED**.

Judge TANG and Judge LAWRENCE concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court